**Margaret JENSVOLD, M.D.**

v.

**Donna SHALALA.**

**Civ. No. L–90–3123.**

United States District Court,
D. Maryland.

Aug. 13, 1993.

---

Gary P. Jordan, U.S. Atty., D. Md. and Roann Nichols and Kathleen McDermott, Asst. U.S. Attys., Baltimore, MD, for defendant.

Lynne Bernabei, Debra S. Katz, and Bettina Pearl, Washington, DC, for plaintiff.

### REVISED MEMORANDUM

LEGG, District Judge.

In this Title VII action, the Court is called upon to review plaintiff's objections to Magistrate Goetz's Report and Recommendation concerning defendant's motion for summary judgment. For the reasons set forth below, the Court will, by separate order, ADOPT the report IN PART and REJECT it IN PART. Thus, the Court will GRANT defendant's motion IN PART and DENY the motion IN PART.

### I. FACTS

Plaintiff, Margaret Jensvold, M.D., is a practicing psychiatrist who served as a Medical Staff Fellow in the National Institute of Mental Health ("NIMH") from July 1987 to July 1989. A Medical Staff Fellowship is "designed to provide developmental experience and training in biomedical research to junior-level physicians,"[1] and incorporates clinical work, direct patient contact, and laboratory research.[2] Fellowship appointments are made for either two or three years; an initial two-year appointment may be extended for an additional year.[3] The first year of the fellowship is "usually predominantly clinical," while "[t]he following years focus primarily on research."[4]

Each fellow is assigned to a "preceptor", who supervises the fellow's work and is "responsible for training in research methods and design, and for guidance in the conduct of specific research undertakings and in the interpretation of results."[5] A fellow is also permitted to supplement his or her work at NIMH with evening study courses, lectures

---

1. Plaintiff exhibit 2 at 2.

2. Plaintiff exhibit 2 at 3.

3. Plaintiff exhibit 2 at 9.

4. Plaintiff exhibit 3 at 115–16.

5. Plaintiff exhibit 3 at 3.

by guest speakers, and attendance at medical seminars.[6]

Dr. Jensvold was one of thirteen medical staff fellows assigned to NIMH in 1987 (nine were male and four were female). She was assigned to NIMH's Unit on Peptide Studies, under the supervision of Dr. David R. Rubinow. In September 1988, Dr. Rubinow informed Dr. Jensvold that her fellowship would not be extended for an additional year. The twelve other fellows who commenced their fellowships in 1987 all received extensions of their initial two-year appointments. In October 1988, Dr. Rubinow allegedly told plaintiff that her work at NIMH was "not valued" and did not merit her continued presence at NIMH. She was later offered a one-year unpaid guest researcher position at NIMH by Dr. Frank Putnam.

Dr. Jensvold contends that, during her tenure at NIMH, she was treated in a discriminatory manner by Dr. Rubinow and deprived of the "core benefits" of her fellowship.[7] Specifically, plaintiff asserts that Dr. Rubinow: (i) failed to mentor her or guide her in her research; (ii) failed to apprise her of conferences and professional meetings; (iii) prevented her from participating in important biological research performed in his laboratory; (iv) assigned her to perform a disproportionate number of routine tasks; (v) refused to extend her fellowship for a third year; (vi) discussed her appearance and her former marriage during mentoring sessions; (vii) requested that she consult a psychiatrist; (viii) blocked her attempts to obtain publication credits; and (ix) misappropriated her research ideas.

On November 16, 1988, plaintiff initiated EEO counseling. She filed the first of several EEO complaints in February 1989 and initiated the instant action on December 3, 1990. Plaintiff asserts Title VII violations based on: (i) disparate treatment; (ii) hostile environment sexual harassment; and (iii) retaliation. Defendant has moved for sum-

mary judgment, contending that plaintiff's claims are time-barred and/or administratively barred, and that plaintiff has failed to state a *prima facie* case of sex discrimination.

On December 17, 1992, Magistrate Judge Goetz issued a Report & Recommendation, in which he recommended that summary judgment be granted in defendant's favor. On January 7, 1993, plaintiff filed an opposition to Magistrate Goetz's report. Pursuant to Fed.R.Civ.P. 72,[8] the Court will review Magistrate Goetz's Report and Recommendation *de novo.*

## II. *STANDARDS FOR SUMMARY JUDGMENT*

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if the moving party can show that "there is no genuine issue of material fact" and that it is "entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant bears the initial burden of showing, through evidence which would be admissible at trial, that "a fair-minded jury could [not] return a verdict for the [plaintiff]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the movant makes this preliminary showing, the burden shifts to the opposing party to delineate, with supporting admissible evidence, an issue of material fact. The Court is required to view that evidence in the light most favorable to the non-movant. A "mere scintilla of evidence in support of the plaintiff's position," however, shall not suffice. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

## III. *DISCUSSION*

### A. *Disparate Treatment*

Defendant contends that Dr. Jensvold's disparate treatment claim is time-barred

---

6. Plaintiff exhibit 3 at 3.

7. Plaintiff's Objections to Magistrate Goetz's Report and Recommendation at 46.

8. Fed.R.Civ.P. 72(b) provides that, upon timely objection by a party to a magistrate's report and

recommendation regarding a dispositive motion, the Court "shall make a *de novo* determination ... of any portion of the magistrate's disposition to which specific written objection has been made."

with respect to allegedly discriminatory acts which took place prior to October 16, 1988 because plaintiff failed to initiate EEO counseling until November 16, 1988. Under 29 C.F.R. 1613.214 (1988), a federal employee's discrimination claim is time-barred unless she seeks counseling from an EEO counselor regarding acts of alleged discrimination within 30 days of the allegedly discriminatory event. *Zografov v. V.A. Medical Center*, 779 F.2d 967, 968–69 (4th Cir.1985).

There are two exceptions to the general rule that a federal employee must seek EEO counseling within 30 days of an alleged act of discrimination or be barred from pursuing a claim in federal court. The first exception, known as "equitable tolling", applies when government misconduct prevents an individual from exercising her rights in a timely fashion. This exception has not been raised by the plaintiff and has no application to the instant case.

The second exception is generally referred to as the "continuing violation" doctrine, which "allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992). As Judge Ellis explained in *Bradley v. Carydale Enterprises*, 707 F.Supp. 217, 221 (E.D.Va. 1991), the continuing violation rule "reflects the court's efforts to reconcile the inherent tension between two important principles— the general policies undergirding [statutes of limitation] and the broad remedial intent of Congress in enacting civil rights laws." (citation omitted).

In order to invoke the continuing violation doctrine, a plaintiff must first demonstrate that an alleged violation of Title VII took place within the limitations period. *Hill v. AT & T Technologies, Inc.*, 731 F.2d 175 (4th Cir.1984). Plaintiff contends that an act of alleged discrimination took place during an alleged conversation between herself and Dr. Rubinow on October 20, 1988, less than thirty days prior to the date on which she initiated EEO counseling. In this conversation, Dr. Rubinow allegedly informed plaintiff that the projects on which she had worked at NIMH were "not valued" and did not merit her continued presence at NIMH. Defendant contends that the conversation that allegedly took place between plaintiff and Dr. Rubinow on October 20 never happened, and that, if it did, it did not constitute an act of discrimination.

The Court finds that plaintiff has raised a genuine issue of material fact with respect to whether the alleged October 20, 1988 conversation between Dr. Rubinow and Dr. Jensvold constituted an act of discrimination. As the Supreme Court pointed out in *Hishon v. King & Spalding*, 467 U.S. 69, 74–75, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984), Title VII forbids discrimination on the basis of sex in the "terms, conditions, or privileges of employment."[9] Plaintiff has adduced evidence that research opportunities, training in data analysis and research design, and impartial consideration for a third year of work at NIMH constituted terms and privileges of plaintiff's employment.[10]

**9.** 42 U.S.C. § 2000e–2(a) provides, in pertinent part, that "it shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his .. terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–16, which is applicable to federal employees, provides, in pertinent part, that "[a]ll personnel actions affecting employees ... in executive agencies ... shall be made free from any discrimination based on ... sex." Although the terminology involved in these two provisions of Title VII is somewhat different, the Supreme Court has indicated, based on a review of the legislative history of § 2000e–16, that § 2000e–16 was intended to accord "aggrieved federal employees or applicants ... the full rights available in the courts as are granted to individuals in the private sector under title VII." *Chandler v.*

*Roudebush*, 425 U.S. 840, 841, 96 S.Ct. 1949, 1950, 48 L.Ed.2d 416 (1976).

**10.** Plaintiff exhibits 2 and 3, which describe the medical fellowship program at NIH and NIMH, state explicitly that training in research methods and design, guidance in research and in the interpretation of results, and possible extension of the fellowship for a third year, comprise terms and/or benefits of employment as a medical fellow. Plaintiff exhibit 2 at 9–10, 30; exhibit 3 at 3. Plaintiff also produced evidence that raises a genuine issue of fact as to whether the prospect of remaining at NIMH as a "guest researcher" or in another capacity in order to complete and publish research projects constitutes an implicit term of a fellow's employment. Su Dep. at 44–47; Putnam Dep. at 182–83, 191, 249–50.

Plaintiff has also produced evidence tending to show that, during the alleged October 20 conversation, Dr. Rubinow belittled her work and indicated his unwillingness to allow her to stay at NIMH to complete and publish her research.[11] *See* discussion *infra.* In addition, plaintiff has adduced evidence tending to show that she received work assignments and "mentoring" experiences (such as the alleged October 20 conversation) that were qualitatively different than those of her male peers throughout her tenure at NIMH, including the 30 day period prior to the date on which she initiated EEO counseling. These actions, if proven to have been animated by Dr. Rubinow's animus toward plaintiff on the basis of her sex, would constitute discrimination in the terms, conditions, and privileges of plaintiff's employment.

Moreover, plaintiff has produced evidence which indicates that Dr. Rubinow assigned to plaintiff the projects that he later described as "not valued,"[12] and offered her little guidance in her work on these projects. An employer "cannot use an employee's diminished work performance as a legitimate basis for removal where the diminution is a direct result of the employer's discriminatory behavior." *Delgado v. Lehman,* 665 F.Supp. 460, 467 (E.D.Va.1987) (citations omitted). Plaintiff has produced evidence that tends to show that Dr. Rubinow's allegedly disparate treatment of her may have led directly to Dr. Rubinow's decision to prevent her from remaining at NIMH for failure to publish and failure to do "valued" work.

■ Defendant contends, however, that *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir. 1981), bars plaintiff from recovering for Dr. Rubinow's alleged wrongdoing during the alleged October 20 conversation. In *Page,* the Fourth Circuit concluded that disparate treatment Title VII claims asserted by federal employees should be based upon alleged discrimination in "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating," rather than "interlocutory or mediate decisions having no immediate effect upon employment conditions." 645 F.2d at 233. The *Page* court emphasized, however, that it "suggest[s] no general test for defining those 'ultimate employment decisions' which alone should be held directly covered" by Title VII. *Id.*

Moreover, the facts of the *Page* case differ significantly from those alleged in the instant action. In *Page,* the appellant sought to challenge the racial makeup of a review panel that denied him a promotion. The Fourth Circuit rejected this proposal, reasoning that the appellant had to assert his claim with respect to the panel's decision, rather than challenging the composition of the panel itself. As the Court explained, "decisions such as those concerning composition of the review committees in the instant case . . . are simply steps in a process for making such obvious end-decisions as those to hire, to promote, etc." *Id.*

In this case, however, plaintiff challenges alleged decisions and actions that directly affected the terms and conditions of her employment, including work assignments, the quality of training and guidance she received, and Dr. Rubinow's alleged determination that the type of work she was doing did not merit her continued presence at NIMH for a third year of research and publication.

---

11. Although Dr. Rubinow told plaintiff in September 1988 that her fellowship would not be renewed for a third year, he did not indicate his unwillingness to allow her to remain at NIMH in any capacity until the alleged October 20, 1988 conversation. Because plaintiff has raised a genuine issue of fact as to whether the opportunity to remain at NIMH for a third year in a position other than that of a fellow constituted a term or condition of her employment, the alleged October 20 conversation could constitute an "act of discrimination" for purposes of plaintiff's continuing violation theory. The Court makes no determination at this time as to whether the alleged conversation actually took place or whether it constituted an act of discrimination. Because (i) plaintiff testified under oath that the conversation took place; *see* Plaintiff exhibit 1; (ii) plaintiff and Dr. Rubinow were the only persons present during the alleged conversation; and (iii) the Court is required to view the evidence in the light most favorable to plaintiff, the Court accepts plaintiff's version of the facts for the purposes of the present motion.

12. Dr. Rubinow had the exclusive authority to determine the projects on which a fellow could work. Schmidt Dep. at 242, 251, 366; Denicoff Dep. at 72.

Thus, to the extent that *Page* governs the instant case, the Court finds that the acts in question were not "interlocutory or mediate decisions having no immediate effect upon employment conditions," and that *Page* does not bar her claim. *Id.; see also Palmer v. Shultz,* 815 F.2d 84, 97 (D.C.Cir.1987) (plaintiffs alleging discrimination in work assignments state claim under 42 U.S.C. § 2000e–16); *Segar v. Smith,* 738 F.2d 1249 (D.C.Cir. 1984) (disparate treatment claim asserted by federal employees concerning work assignments).

■ In order to benefit from the continuing violation doctrine, Dr. Jensvold must also demonstrate that the act that falls within the limitations period was part of a continuing pattern or practice of discrimination.[13] *Hull v. Cuyahoga Valley Bd. of Educ.,* 926 F.2d 505, 510 (6th Cir.1991). She can meet this burden by raising a genuine issue of fact as to whether the allegedly discriminatory acts were "related closely enough to constitute a continuing violation," rather than "discrete, isolated, and completed acts which must be regarded as individual violations." *Selan* at 565.

The Court finds that Dr. Jensvold has met her burden in this regard. Dr. Jensvold alleges, with supporting evidence, that Dr. Rubinow engaged in a continuous, subtle, ongoing practice of treating her differently than similarly situated male employees with respect to work assignments, training, and other aspects of her position as a medical fellow. The instances of alleged discrimination to which plaintiff points are better characterized as a pattern of differential treatment than as "completed, distinct occurrences." *Wingfield v. United Technologies Corp.,* 678 F.Supp. 973, 979 (D.Conn.1988). Thus, plaintiff may be entitled to "sweep within the limitations period the earlier alleged acts of discrimination." *Bradley* at 222.[14]

■ Turning to the substance of plaintiff's disparate treatment claim, the Court finds that plaintiff has produced sufficient evidence [15] to create a genuine issue of material fact with respect to her claim of disparate treatment in the terms, conditions, and privileges of her employment at NIMH.[16]

**13.** A plaintiff must also allege a continuing violation of her rights in both her EEO complaint and her district court complaint in order to invoke the continuing violation exception to the 30 day limitations period applicable to federal employees. Dr. Jensvold has satisfied this requirement.

**14.** A few of the allegedly discriminatory acts to which plaintiff points do, however, constitute "discrete, isolated, and completed acts which must be regarded as individual violations." *Selan* at 565. As such, they are not actionable in the context of plaintiff's continuing violation theory. These include: (i) Dr. Rubinow's alleged referral of plaintiff to a psychiatrist; and (ii) Dr. Rubinow's September 1988 decision not to renew plaintiff's fellowship. The Court has not determined whether plaintiff will be permitted to introduce evidence concerning these alleged acts of discrimination at trial.

The Court also notes that defendant will suffer no harm if the jury is permitted to hear evidence regarding the alleged October 20 conversation and the alleged acts of discrimination that took place prior to that date because this evidence constitutes relevant background information with respect to plaintiff's claims of disparate treatment during the period between October 16, 1988 and the conclusion of her fellowship. Plaintiff asserts, and presents evidence (e.g., plaintiff's notes and declaration), regarding numerous instances of alleged disparate treatment during this period (concerning work assign-

ments, mentoring sessions, denial of publication credits, exclusion from meetings, etc.), which remain actionable regardless of whether or not the alleged October 20 conversation took place. If, as defendant contends, plaintiff's evidence regarding the alleged October 20 conversation is unpersuasive and the conversation did not constitute an act of discrimination, defendant may make a motion for judgment on partial findings during the trial. Fed.R.Civ.P. 52(a). If the motion is granted, the jury will be instructed that it may not grant plaintiff relief for alleged discrimination prior to October 16, 1988.

**15.** This evidence includes evidence of alleged disparate treatment that took place after October 16, 1988.

**16.** In order to state a *prima facie* disparate treatment case under Title VII a plaintiff must show that: (i) she is a member of a protected class; (ii) she was qualified for the job and her job performance was satisfactory; (iii) despite her qualifications and performance, she suffered adverse employment action; and (iv) she was treated differently than similarly situated male employees. *Raley v. Board of St. Mary's Cty. Comm'rs,* 752 F.Supp. 1272, 1278 (D.Md.1990). If a plaintiff meets this initial burden, the burden shifts to the employer to state its legitimate, nondiscriminatory reasons for its actions. The burden then shifts back to the plaintiff to come forward with

This evidence includes, but is not limited to, the following: (i) expert opinions rendered by Dr. Leah Dickstein, M.D.[17] and Dr. Kay Deaux, Ph.D.,[18] which conclude that plaintiff was subjected to differential treatment on the basis of her sex;[19] (ii) evidence that Dr. Rubinow had the exclusive authority to determine the projects on which and the people with whom a fellow could work, as well as the exclusive authority to determine which fellows would be deemed co-authors on publications resulting from work done in his lab;[20] (iii) testimony from male fellows about the substantial guidance and support they received from Dr. Rubinow, which contrasts sharply with Dr. Jensvold's testimony regarding her experience with Dr. Rubinow;[21] (iv) testimony from Dr. Rubinow that he excluded Dr. Jensvold from an educational meeting to which he invited Dr. Schmidt and prevented her from working on some projects;[22] (v) evidence that Dr. Rubinow gave plaintiff an exemplary yearly evaluation in mid–1988 that permitted her to receive an unusually large salary increase,[23] yet Dr. Rubinow refused to permit plaintiff to remain at NIMH for a third year; (vi) inconsistencies in Dr. Rubinow's alleged reasons for his refusal to extend Dr. Jensvold's fellowship;[24] (vii) evidence that plaintiff was not permitted to work on an RU–486 study or other biological studies unique to NIMH;[25] (viii) Dr. Jensvold's testimony; and (ix) evidence that the male fellows to whom plaintiff compares herself may have been similarly situated individuals.[26] Accordingly, the Court will deny defendant's motion for summary judgment with respect to plaintiff's disparate treatment claim.

### B. Hostile Environment

■ Defendant contends that plaintiff's hostile environment claim is time-barred because no alleged act of sexual harassment took place within 30 days of the date on which plaintiff commenced EEO counseling.[27] The Court agrees. Although plaintiff points to an alleged act of disparate treatment that took place within 30 days of her first contact with an EEO officer, plaintiff has failed to point to any instance of alleged harassment that took place within thirty days of the date she initiated EEO counseling. Plaintiff cannot rely upon evidence of disparate treatment in support of her hostile environment claim, because the two claims are factually and legally distinct. *Zalewski v. M.A.R.S. Enterprises, Inc.*, 561 F.Supp. 601, 605 (D.Del.1982); *Sandom v. Travelers Mortg.*

evidence tending to show that the employer's proffered reasons for its actions are pretextual. *Id.* As discussed *infra*, the Court finds that plaintiff's evidence is sufficient to withstand summary judgment with respect to her *prima facie* case and to create a genuine issue of fact with respect to the allegedly pretextual nature of defendant's explanation for its actions.

**17.** Dr. Dickstein is a professor in the Department of Psychiatry and Behavioral Sciences at the University of Louisville School of Medicine.

**18.** Dr. Deaux is a professor of Social–Personality Psychology at the City University of New York Graduate Center.

**19.** Plaintiff exhibit 4 ¶ 4; Plaintiff exhibit 11. The Court has not been requested to decide, nor has it determined whether it will permit Drs. Deaux and Dickstein to testify as expert witnesses at trial.

**20.** Schmidt Dep. at 242, 251, 366; Denicoff Dep. at 72.

**21.** Rosenstein Dep. at 56–58; Denicoff Dep. at 90–91; Schmidt Dep. at 251, 261, 358, 541.

**22.** Rubinow Dep. at 203, 214, 646; *see also* Baron Dep. at 70–71.

**23.** Rubinow Dep. at 168–69. Yet in notes written by Dr. Rubinow on 11/18/88, Dr. Rubinow states that Dr. Jensvold "was the least skilled member of the doc staff" and "wasn't the slightest bit productive prior to March of 1988." Plaintiff exhibit 16.

**24.** During the October 20, 1988 meeting, Dr. Rubinow allegedly told Dr. Jensvold that she could not remain at NIMH for a third year because the projects on which she worked were "not valued". This statement conflicts with a statement Dr. Rubinow made to the EEO in early 1989 that "Dr. Jensvold was involved in several worthwhile projects." Attachment 35 to Plaintiff exhibit 1 at 2.

**25.** Schmidt Dep. at 537–38, 541; Baron Dep. at 340–42, 344–45; Plaintiff exhibit 14.

**26.** Declaration of Jean Hamilton ¶ 5; Declaration of Lori Altshuler ¶ 5; Schmidt Dep at 401; Denicoff Dep. at 44–45.

**27.** Motion for Summary Judgment at 23–28.

*Services, Inc.*, 752 F.Supp. 1240, 1247–48 (D.N.J.1990). Thus, plaintiff's hostile environment claim is time-barred under 29 C.F.R. 1613.214 (1988) (see discussion *supra*).[28]

## C. *Retaliation*

 In order to state a *prima facie* claim of retaliation, plaintiff must show that: (i) she engaged in activity protected by 42 U.S.C. § 2000e–3; (ii) defendant took adverse action against her; and (iii) a causal connection exists between the protected activity and the adverse action. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). Plaintiff may recover for retaliatory actions taken after her employment at NIMH ceased if "the alleged discrimination is related to or arises out of the employment relationship." *Passer v. American Chemical Soc.*, 935 F.2d 322 (D.C.Cir. 1991) (collecting cases).[29]

Dr. Jensvold contends that she was retaliated against after contacting an EEO counselor and filing a formal complaint in the following ways: (i) Dr. Rubinow made threats to her to discourage her from following through with the EEO; (ii) Dr. Rubinow attempted to thwart her attainment of a guest researcher position with Dr. Putnam; (iii) Dr. Rubinow refused to perform laboratory work that plaintiff required in order to complete and publish her research; and (iv) Dr. Rubinow refused to name plaintiff as a co-author on a number of papers to which she had contributed.[30]

Plaintiff has also produced sufficient evidence in support of her retaliation claim to withstand a motion for summary judgment, including evidence that Dr. Rubinow's stated reasons for his actions are pretextual. This evidence includes, but is not limited to, the following: (i) testimony from Dr. Putnam that Dr. Rubinow informed the NIMH director's office that "there had been problems with Dr. Jensvold's work"; [31] (ii) testimony from Dr. Putnam that, in contrast to Dr. Rubinow's opinion of the value of Dr. Jensvold's work and the importance of her research, he "thought that the study was a valuable piece of information and that it would be nice if we could continue it"; [32] (iii) Dr. Putnam's testimony that the cost to NIMH of retaining plaintiff as a guest researcher for a year would be approximately $700 and that his supervision of plaintiff took about one hour per week, which contrasts sharply with Dr. Rubinow's statement to the EEO that he had refused plaintiff a guest researcher position because it would require too much "time and money"; [33] (iv) Dr. Rubinow's statement to the EEO that plaintiff should not stay on at NIMH as a guest researcher because she had failed to publish anything in two years; [34] (v) evidence that other fellows did not publish anything during the first two years of their fellowship, and that this was not unusual and did not prevent them from staying on at NIMH; [35] (vi) anxious letters from plaintiff to Dr. Rubinow, asking him to analyze blood samples in his

---

**28.** Because the Court finds that plaintiff's hostile environment claim is time-barred, the Court will not consider defendant's contention that the claim is administratively barred because plaintiff failed to exhaust her administrative remedies.

**29.** The Court notes that most of the alleged retaliation against plaintiff took place during her tenure as a medical fellow, and, hence, during her employment at NIMH.

**30.** Although plaintiff contends that Dr. Rubinow also retaliated against her in other ways, such as excluding her from valuable research in his lab, failing to invite her to educational meetings, and refusing to allow her to remain at NIMH, these acts of "retaliation" are indistinguishable from Dr. Rubinow's alleged disparate treatment of plaintiff prior to the time she contacted the EEO. Thus, the Court finds that it will be difficult, if not impossible, for plaintiff to establish a causal

connection between her EEO activity and these actions. Because plaintiff has alleged and produced evidence of other acts of retaliation, however, (*see* discussion *infra*), plaintiff is still able to raise a genuine issue of fact with respect to her *prima facie* case.

**31.** Putnam Dep. at 182.

**32.** Putnam Dep. at 183.

**33.** Defendant exhibit AA (Final EEO counseling report dated 7/21/89); Putnam Dep. at 191, 249–50.

**34.** Defendant exhibit AA.

**35.** Su Dep. at 44–47; Post Dep. at 114–116; Rosenstein Dep. at 102–04.

lab, to which plaintiff lacked access, in order to allow plaintiff to publish her work and present it at an upcoming conference;[36] and (vii) Dr. Rubinow's written response to plaintiff's letters, in which he berates her for failing to produce a paper "after almost two and a half years," and tells her that he wants her to "bring a single project to successful completion before [he commits] many thousands of dollars to generate data that may, on the basis of [her] track record, never see the light of day".[37]

Defendant contends that because these alleged acts of retaliation did not involve "ultimate employment decisions", they are not actionable under Title VII. The Court disagrees. As the D.C. Circuit stated in *Passer*, Title VII "does not limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer, or demotion." 935 F.2d at 331;[38] *see also Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990) (failure to provide job references could state valid Title VII retaliation claim); *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1532 (11th Cir.1989) (unlawful retaliation to persuade new employer to fire employee); *Passer* at 331–332 (cancellation of seminar honoring former employee, which humiliated him and made it more difficult for him to procure future employment, actionable under Title VII).

The Court finds that the allegedly retaliatory actions described *supra*, which include alleged attempts to undermine plaintiff's ability to attain a guest researcher position with Dr. Putnam, are sufficient to support a Title VII retaliation claim. Accordingly, the Court will deny defendant's motion for summary judgment with respect to plaintiff's retaliation claim.

**36.** Attachments 65 and 66 to Plaintiff's exhibit 1.

**37.** Exhibit B to Defendant's supplemental memorandum regarding Plaintiff's retaliation claims.

**38.** Although *Passer* was an ADEA case, the Court clearly found that the ADEA anti-retaliation provision is "parallel to the anti-retaliation provision contained in Title VII," and that "cases interpreting the latter provision are frequently relied upon in interpreting the former." 935 F.2d at 330.