Elizabeth HOWZE, Plaintiff,

v.

VIRGINIA POLYTECHNIC and State
University, et al., Defendants.

Civ. A. No. 94–1059–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

July 12, 1995.

Sa'ad El–Amin, El–Amin & Crawford, P.C., Richmond, VA, for plaintiff.

Kay Kurtz Heidbreder, Virginia Polytechnic Institute & State University, Blacksburg, VA, Jerry D. Cain, Commonwealth of Virginia, Special Assistant Attorney General, Blacksburg, VA, for defendants.

## MEMORANDUM OPINION

KISER; Chief Judge.

This case is before the Court on the defendants' motion to dismiss. The parties have fully briefed the issues involved and the Court has heard oral argument. Thus, the motion is ripe for disposition. Based upon the reasons contained herein, I am of the opinion that the defendants' motion should be granted in part and denied in part.

FACTS:

This suit is brought under 42 U.S.C.A. § 1983 (West 1993) and Title VII. Plaintiff claims that the defendants engaged in numerous instances of sex discrimination and retaliation for statutorily protected activities. Plaintiff also alleges that the defendants violated her right to free speech. Plaintiff has another case pending in this district before Judge Turk. *See Howze v. VPI*, Civ. Action No. 91–234 (W.D.Va. April 5, 1991) [the 1991 lawsuit]. The allegations in that complaint are similar to those here, but involve actions occurring prior to the actions involved here. The defendants, with the exception of Virginia Polytechnic Institute ("VPI"), are also different.

The plaintiff is an associate professor of education at VPI. The defendants include VPI itself; Fred Carlisle, formerly the provost; Paul Torgersen, professor of engineering at times relevant to the suit; Judith Jones, associate director of the Virginia Cooperative Extension; and Janine Hiller, professor of business law. The individuals are sued only in their individual capacities.

The allegations of discrimination revolve around two primary events. The first is the tenure process initiated in the plaintiff's division—Health and Physical Education ("HPE")—and the second involves a Special Panel Report ("SPR") issued in August, 1993. To evaluate candidates for tenure, the HPE division established, in November 1991, a Promotion and Tenure Committee ("P & T Committee"). On December 13, 1991, the HPE P & T Committee recommended against plaintiff's promotion. One member gave as a reason plaintiff's 1991 lawsuit against VPI in which she named a graduate

student as a defendant. The primary reason given was plaintiff's lack of "collegiality."

The next step of the tenure process required that the College of Education ("COE") P & T Committee consider plaintiff's candidacy. On January 22, 1992, the COE P & T Committee did not recommend plaintiff for promotion. The reason cited was plaintiff's lack of collegiality. The Dean of the COE concurred with the P & T Committee recommendation.

Plaintiff appealed that decision to defendant Carlisle, who granted plaintiff's appeal. Thus, plaintiff's candidacy was taken up by the University's P & T Committee. This committee did recommend plaintiff for promotion on April 10, 1992. VPI's Board of Visitors approved that promotion on November 16, 1992, after the Board failed to act on the promotion at an earlier meeting. Notwithstanding the lack of Board action, plaintiff's salary and rank were changed to associate professor effective August 16, 1992. Plaintiff alleges that these actions constituted sex discrimination and retaliation for her prior lawsuit over other allegedly discriminatory acts.

The second primary event was the SPR. On August 7, 1992, the *Washington Post* published a column by Judy Mann, in which plaintiff's history of alleged sexual discrimination at VPI was detailed. On September 15, 1992, a similar, but more detailed, article appeared in a publication called the *Collegiate Times*. Following these events, defendant Carlisle appointed a three-person special panel to investigate the plaintiff's claims of discrimination. The other three defendants in this lawsuit were the members of that special panel. The panel completed its report in August 1993 and plaintiff received a copy on September 16, 1993. The report criticized the plaintiff by name for using unprofessional methods to pursue her concerns about sex discrimination. The report also found that others acted unprofessionally and inappropriately, but declined to name those individuals. Plaintiff alleges this action was in retaliation for her prior activities.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") for the promotion events on January 23, 1993. Prior to this time, plaintiff filed an EEOC Intake Questionnaire and an affidavit on June 16, 1992. With respect to the events surrounding the SPR, plaintiff sent a letter to the EEOC on March 13, 1994. There is no evidence on when this letter was received. The formal charge with respect to the SPR events was filed on April 22, 1994.

DISCUSSION:

*Timeliness Issues*

To maintain a sex discrimination lawsuit, a plaintiff must file a charge of discrimination with the EEOC within 180 days of the allegedly discriminatory act. 42 U.S.C.A. § 2000e–5(e)(1) (West 1994). This requirement is akin to a statute of limitations and is therefore subject to equitable modification, such as tolling or estoppel, in appropriate circumstances. *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987), *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988). The 180–day clock begins to run on the day that the discrimination occurred, without regard to the date on which the plaintiff discovered the discriminatory act. *Hamilton v. 1st Source Bank*, 928 F.2d 86, 88 (4th Cir.1990) (en banc).

The first step in addressing the timeliness issue is to determine the date on which the 180–day period began to run. With respect to the promotion and tenure process, there are two potential dates. The first is December 13, 1991. This was the initial unfavorable determination by the HPE P & T Committee. The second is March 3, 1992, the date on which the COE's dean concurred in the findings of the COE P & T Committee. If it is the former date, then the plaintiff did not timely file a charge, even if the June 16, 1992 contact with the EEOC satisfies the charge requirement. *See Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 505, 66 L.Ed.2d 431 (1980) (subsequent appeals or requests for reconsideration do not restart 180–day clock). The defendant does not, however, base its argument on this

question.[1] Instead, it argues, without citation to case law, that the June 16, 1992 EEOC contact is insufficient.

██ I disagree. On June 16, 1992, plaintiff alleges that she filed an affidavit and Intake Questionnaire with the EEOC. This is sufficient to satisfy the charge requirement found in 42 U.S.C.A. § 2000e–5(b), (e)(1). This position is consistent with EEOC regulations concerning the contents of a charge. *See* 29 C.F.R. § 1601.12(b) (1994) (any "written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of" is a sufficient charge); *id.* § 1601.9 (charge must be signed and verified). This position also finds support in judicial interpretation. *See Waiters v. Robert Bosch Corp.*, 683 F.2d 89 (4th Cir.1982) (affidavit filed with EEOC satisfies "charge" requirement); *see also Philbin v. General Elec. Capital Auto Lease, Inc.*, 929 F.2d 321, 323 (7th Cir.1991) (holding that Intake Questionnaire that is later verified constitutes a "charge" in some circumstances). Any question about the affidavit's sufficiency vis-a-vis statutory or regulatory requirements or the dictates of *Waiters* is a question of fact, appropriately resolved at trial or on summary judgment.

The SPR presents a somewhat more difficult issue. First, it is not clear on what date the 180–day clock should start. The report was issued in August. The plaintiff, however, alleges she did not receive a copy until September 16, 1993. No reason is given in the complaint for the delay. Plaintiff relies upon the March 13, 1994 letter as the "charge" that stops the 180–day clock, thus implicitly maintaining that September 16 is the date on which the clock started. However, this position ignores the well-established principle that the date of the alleged unlawful act is the date that marks the time from which the 180 days are counted. *Hamilton,* 928 F.2d at 88; *see also English,* 828 F.2d at 1048; *Morse v. Daily Press, Inc.,* 826 F.2d 1351 (4th Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987); *Felty v. Graves–Humphreys Co.,* 785 F.2d 516 (4th Cir.1986); *Price v. Litton Business Sys., Inc.,* 694 F.2d 963 (4th Cir.1982). Clearly, the SPR itself is what plaintiff claims is the unlawful act, and thus the date of its issuance is the date of the unlawful act. Even if the SPR was issued on the last day of August, the March 13 letter would not be timely.

██ This delay, however, could be excused under the equitable tolling or estoppel doctrines. Equitable tolling applies when the defendant has wrongfully deceived or misled the plaintiff to conceal the existence of a cause of action. *English,* 828 F.2d at 1049. Equitable estoppel applies when the defendant attempted to mislead the plaintiff and the plaintiff reasonably relied upon the misrepresentation by not filing a timely charge. *Id.* Under these doctrines, all of which require the consideration of facts not presently in the record, the 180–day clock could be delayed until September 16, 1993.

If the plaintiff succeeded in tolling or estopping defendant until September 16, the question of the March 13 letter's sufficiency arises. Only the first page of the letter appears in the record to date, thus any attempt at determining the letter's sufficiency against statutory or regulatory requirements is premature. It appears to be lacking the verification requirement of 29 C.F.R. § 1601.9, but without the entire letter, one cannot be sure.[2] Also, there is a question,

---

1. Indeed, if the tenure process is viewed as a whole, as it will be for purposes of plaintiff's retaliation claim, then the clock must start to run at the time of the final decision. *See infra* note 5. This view is consistent with the facts in *Ricks*. In *Ricks*, several faculty committees gave the plaintiff negative recommendations for tenure. 449 U.S. at 252, 101 S.Ct. at 501. The Board of Trustees then officially acted upon those recommendations by voting to deny plaintiff tenure. Plaintiff was informed of this action on June 26, 1974. The Court held that this was the date from which the statute of limitations would run even though plaintiff filed a grievance with the Board almost immediately. *Id.* at 261–62, 101 S.Ct. at 505–07.

The important distinction between *Ricks* and this case is the nature of the process. In *Ricks,* the employer made a final decision and the employee chose to dispute that final decision. In the case at bar, the employer made an interim decision and the employee simply continued along in the process.

2. *Philbin* reveals the possibility, however, that even this defect would not warrant barring plaintiff's claim because, in some cases, subsequent verification may cure the defect.

discussed at length in oral argument, about the date on which the EEOC received this letter. While the plaintiff has several significant hurdles to overcome on the timeliness issue, I cannot say that there is no set of facts under which the plaintiff could not recover. Thus, denying the motion to dismiss is appropriate. *See Mylan Lab., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

*Title VII Individual Defendants*

■ Defendants argued that the individual defendants could not be held liable for two reasons: (1) they were not named in the charge; and (2) *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507 (4th Cir.) (individual supervisor not an employer in age discrimination case), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994), precludes such liability. The plaintiff concedes on brief that it does not press Title VII claims against the individuals. The defendants concede on brief that VPI may be sued under Title VII. Accordingly, the individuals will be dismissed as defendants from Title VII claims, which will proceed only against VPI.[3]

*Title VII Retaliation*

■ The statutory basis for plaintiff's claim is 42 U.S.C.A. § 2000e–3(a). That provision makes it unlawful for an employer "to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice" by Title VII or "because he has made a charge" of discrimination. To state a claim for Title VII retaliation, a plaintiff must prove that: (1) she engaged in protected activity; (2) that her employer took adverse employment action against her; and (3) that a causal connection existed between the protected activity and the adverse action. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985); *Boarman v. Sullivan,* 769 F.Supp. 904, 911 (D.Md.1991). The require-

ment of "adverse employment action," then, helps determine if the employer has engaged in the discrimination the statute requires. Defendant argues that plaintiff fails to satisfy the second element. Defendant notes that plaintiff ultimately received her promotion and that her pay was adjusted to reflect that promotion at the same time as every other person who received a promotion in the same time period. Plaintiff responds that her allegations of emotional distress, etc., in light of the Civil Rights Act of 1991, constitute adverse employment action.

■ Plaintiff's claim of retaliation on the basis of the tenure process must fail for the lack of any "adverse employment action." In the promotion and tenure process, the plaintiff was initially faulted for filing the 1991 lawsuit. This statement reveals that the denial of promotion or tenure may have been, in part, motivated by a desire to punish plaintiff for protected actions. However, the final layer of review, the University P & T Committee and defendant Carlisle, reversed the prior determinations. Plaintiff was ultimately awarded her promotion and tenure and given pay and rank increases at the same time as other promotees. In these circumstances, plaintiff has not suffered an adverse employment action. *Cf. Dennis v. County of Fairfax,* 55 F.3d 151, 153 (4th Cir.1995) (holding that employer corrective action consisting of removing a written reprimand from file and elevating disputed performance scores, both after filing of employee grievances, was not a confession of discrimination); *Boarman,* 769 F.Supp. at 910–11 (holding that plaintiff who was promoted, but not to the position she desired, suffered no adverse employment action). To hold otherwise opens the door to endless litigation of intermediate steps in an employment decision-making process that have no effect on the ultimate outcome.[4] It would also discourage employers from responding to alle-

---

**3.** The section 1983 claim does not keep the individuals in this action for Title VII violations. When a federal statute provides a cause of action, section 1983 does not serve to duplicate it. *Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364, 1370 (4th Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 147, 107 L.Ed.2d 106 (1989) (Age Dis-

crimination in Employment Act cannot be used as basis for § 1983 claim).

**4.** Furthermore, I reject the plaintiff's attempt to use the damages provisions of the Civil Rights Act of 1991 to create a new basis for liability.

gations of discrimination. *See Dennis,* 55 F.3d at 154–55.

■ Thus, in the case at bar, where the tenure decision was following the chain of appeal, each decision along the way is not actionable. Only the final decision is the ultimate act. In essence, there has been no legal effect from the initial actions. Indeed, there is no allegation in the complaint that the plaintiff is considered a "second-class" associate professor, or has only "half-tenure." Rather, it appears from the face of the complaint that the plaintiff is fully tenured and is equal to her peers as a result of the tenure process.[5]

The same result does not accrue, however, with respect to the SPR. Defendant argues that an "adverse employment action" requires an "ultimate employment decision" such as hiring, granting leave, discharging, promoting, and the like. *See Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981); *Ward v. Johns Hopkins Univ.,* 861 F.Supp. 367, 377 (D.Md.1994) (relying on *Page*); *Lucas v. Cheney,* 821 F.Supp. 374, 375 (D.Md.1992) (same), *aff'd,* 991 F.2d 790 (4th Cir.1993) (table). *Page,* however, is inapposite to the present case. First, it was not a retaliation case, but rather addressed an attempt to rewrite the prima facie case requirements in a failure to promote case. *Page,* 645 F.2d at 232. Second, the court was defining the term "personnel actions" in 42 U.S.C.A. § 2000e–16(a), dealing with discrimination in federal employment. The court also addressed other "comparable provisions of Title VII, most notably ... 42 U.S.C. § 2000e–2(a)(1)." *Id.* at 233. However, both of the referenced provisions, and thus the likely meaning of "comparable provisions," focus upon the "substantive" anti-discrimination provisions of Title VII. There is no indication that the Fourth Circuit intended this definition to apply to the retaliation provision in section 2000e–3(a).

To the extent *Page* is applicable, it stands only for the proposition that where the effects of the adverse action have not yet been felt by the plaintiff, the action is mediate and therefore does not constitute employment action. *See Jensvold v. Shalala,* 829 F.Supp. 131, 136–37 (D.Md.1993) (distinguishing *Page* on similar grounds). *Page* involved a black male who alleged that the racial composition of a review panel formed to recommend individuals for promotion constituted discrimination in personnel actions under section 2000e–16(a). Steps in the process to a final decision, the court held, are merely mediate decisions that do not provide a basis for liability. *Page,* 645 F.2d at 233; *see Dennis,* 55 F.3d at 156 ("Where an employer has taken prompt and effective corrective measures to redress alleged incidents of racial harassment, the employer is not liable because its final act was not of a discriminatory nature.").

■ Not so with plaintiff's retaliation claim. Certainly, if the retaliation claim was subject to a grievance process, the above rule would apply, i.e., no harm is felt until the final decision. Thus, if the SPR had been subject to review and it was retracted and in no way became part of plaintiff's employment record, then there would be no actionable retaliation claim because there was no *adverse* employment action. On the face of the complaint, however, such a process does not exist. Rather, it appears that the SPR was the final word from VPI regarding plaintiff's actions. Thus, it could be an adverse employment action. *See Jensvold,* 829 F.Supp. at 139 (holding that retaliation prima facie case satisfied where supervisor made threats to discourage plaintiff from filing formal complaint, attempted to thwart attainment of different position, refused to perform needed lab work, and refused to name plaintiff on papers she allegedly co-authored).

■ Authority outside the circuit provides an additional ground on which to distinguish the *Page* case. Adverse employment

---

5. To the extent the tenure process is viewed as a whole, it must be the end of that process that marks the date from which the 180–day filing period runs. Title VII requires that the EEOC complaint be filed within 180 days after the unlawful practice "occurred." 42 U.S.C.A. 2000e–5(e)(1). *Cf. Hamilton,* 928 F.2d at 87. If "adverse employment action" requires action with a final, binding, legal effect, then action "occurs" on the date the action with the legal effect occurs. Here, it would be the date on which the review process finally concluded.

actions certainly include ultimate employment decisions. But the term also includes actions that would adversely affect one's professional reputation or ability to gain future employment, whether or not there was an ultimate employment decision. *See Nelson v. Upsala College,* 51 F.3d 383, 387 (3d Cir. 1995) (listing cases); *Passer v. American Chem. Soc'y,* 935 F.2d 322, 331 (D.C.Cir. 1991) (cancellation of symposium in honor of plaintiff an adverse action where plaintiff alleged that cancellation humiliated him amongst peers *and* made procurement of future employment more difficult). Applying that standard in the present case, the SPR could constitute adverse employment action. It is conceivable that the SPR's contents could hinder the plaintiff in obtaining research grants, endowed professorships, publications, and other similar accoutrements of a tenured professor. Plaintiff pleads, albeit not in Count I with the retaliation claim, that her professional reputation has suffered as a result of the SPR. This allegation is sufficient for the plaintiff to survive defendants' motion to dismiss.

*First Amendment Claim*

Plaintiff maintains in Count II that the SPR was in retaliation for her First Amendment activities. She maintains that the SPR contents were intended to punish her for her complaints about sex discrimination, harassment, academic misconduct, "tenure fraud," and cover-up of fraud. The defendants respond on three different fronts. The argument I find well-taken is defendant's claim to qualified immunity.[6]

 Resolving the qualified immunity inquiry at the earliest possible stage of the litigation ensures that government actors get the full benefit of the doctrine. *Schultea v. Wood,* 47 F.3d 1427, 1432 (5th Cir.1995); *DiMeglio v. Haines,* 45 F.3d 790, 795 (4th Cir.1995). Indeed, in recognition of the importance of qualified immunity, the Fourth Circuit has adopted a heightened pleading standard in actions against government offi

cials. *Dunbar Corp. v. Lindsey,* 905 F.2d 754, 764 (4th Cir.1990). *But see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, ——, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993) (heightened pleading standard may not be applied in cases alleging municipal liability). The purpose of the requirement is to provide sufficient factual detail early in the litigation so that discovery may be avoided. *Dunbar,* 905 F.2d at 764; *see Schultea,* 47 F.3d at 1433–34 (relying upon reply authorized by Fed.R.Civ.P. 7). Whether some heightened pleading standard survives in the Fourth Circuit after *Leatherman* and in what form need not detain me here. *See Jordan by Jordan v. Jackson,* 15 F.3d 333, 339 n. 5 (4th Cir. 1994); *Collin v. Board of Visitors of Univ. of Va.,* 873 F.Supp. 1008, 1014–15 (W.D.Va. 1995). The plaintiff's complaint in this case contains sufficient detail to allow the qualified immunity analysis to proceed.

 Government officials exercising discretionary functions are entitled to qualified immunity if the officer's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In a qualified immunity inquiry, the court must engage in a three-step process. First, the court must identify the specific right allegedly violated. Second, the court must determine if the right was clearly established at the time the defendants acted. Third, if the right was clearly established, then the court must determine whether a reasonable person in the official's position would have known that his actions violated that right. *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir.1992). Government officials are not liable for bad guesses in gray areas. *Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).

 The right violated in this case is the right to be free of retaliatory action for the exercise of First Amendment rights. There

---

**6.** I note in passing that Judge Turk previously denied a motion to dismiss on similar grounds in the 1991 lawsuit. Plaintiff makes great weight of this fact. The problem is the lack of a written opinion in the 1991 lawsuit. Judge Turk entered only a one-page order denying defendants' motion. Thus, the basis for his decision is not clear.

are two components of this right: the retaliation component and the First Amendment component. Both must be clearly established for the right as a whole to be clearly established. *See Tindal v. Montgomery County Comm'n,* 32 F.3d 1535, 1539 (11th Cir.1994). I will assume for the sake of argument that protection from retaliatory action, less than a firing or demotion, for First Amendment conduct is a clearly established right. *See Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Holland v. Rimmer,* 25 F.3d 1251, 1254 (4th Cir.1994); *Huang v. Board of Governors of Univ. of N.C.,* 902 F.2d 1134, 1140 (4th Cir. 1990).[7] Accordingly, the defendants' entitlement to immunity rests upon the nature of the plaintiff's speech.

Initially, I note a fairly recent Supreme Court decision with a potential impact on this case. In *Waters v. Churchill,* —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994), the Supreme Court addressed whether the test in *Connick,* for determining what employee speech the First Amendment protects, should be applied to what the government employer thought the employee said or what the trier of fact ultimately determines to have been said. Although *Waters* has potentially far-reaching effects in employee speech cases, *see Jeffries v. Harleston,* 52 F.3d 9 (2d Cir.1995), it is not applicable here. Because this case is at the motion to dismiss stage, all facts are taken as alleged. There can be, therefore, no dispute as to what was said and thus no need to apply *Waters* in this case. *See Feldman v. Philadelphia Hous. Auth.,* 43 F.3d 823, 831 (3d Cir.1994); *Spiering v. City of Madison,* 863 F.Supp. 1065, 1075 (D.S.D.1994).

 In determining whether speech is protected by the First Amendment, the court examines whether the speech qualifies as a matter of public concern and the effect of the speech on the efficiency, discipline and proper administration of the work place. *Holland,* 25 F.3d at 1254. A case-by-case approach is required. *Id.* at 1255. The "content, form and context of a given statement" is relevant in deciding whether the statement is one of public concern. *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91. An employee's attempt to expose actual or potential wrongdoing or a breach of the public's trust in government affairs is speech on a matter of public concern. *Cf. Jurgensen v. Fairfax County,* 745 F.2d 868, 879 (4th Cir.1984). However, an employee's complaint about her own employment is not a matter of public concern. *Huang,* 902 F.2d at 1140.

Applying these principles to this case, it appears that the nature of plaintiff's speech was sufficiently clouded so as to justify the conclusion that its protected status was not clearly established at the time of the incident. Plaintiff's speech had components of both matters of public concern and matters of private grievances. For example, plaintiff's allegations of fraud and cover-up of fraud at one of Virginia's largest public universities is certainly a matter of public concern. *See Feldman,* 43 F.3d 823, 829 (3d Cir.1994) (highlighting improprieties and fraud in a government agency is a matter of public concern).

 On the other hand, the allegations of sex discrimination seem to be directed more towards the plaintiff's individual grievances. Generally, discrimination is a matter of public concern. *Seemuller v. Fairfax County Sch. Bd.,* 878 F.2d 1578, 1582–83 (4th Cir. 1989) (holding that public school teacher's letter in response to student's allegations of sexual discrimination in physical education classes was a matter of public concern); *Arvinger v. Mayor & City Council of Baltimore,* 862 F.2d 75 (4th Cir.1988) (holding

---

7. This is another weakness in plaintiff's position. While not the primary ground for my opinion, an independent basis for the qualified immunity defense is the lack of a clearly established constitutional protection of the harm plaintiff allegedly suffered. Where the plaintiff has not suffered demotion, dismissal, or a denial of promotion or transfer, the plaintiff has not been deprived of a valuable constitutional right. *DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995) (holding

that in 1990, reassignment or reprimand in retaliation for protected speech was not clearly established). Even today, actions less than demotion are probably not sufficiently adverse to implicate the First Amendment. *Id.* at 807; *see Dorsett v. Board of Trustees,* 940 F.2d 121, 123 (5th Cir. 1991) (where professor suffered adverse decisions such as adverse teaching assignments, pay increases, and other administrative matters, there was no constitutional deprivation).

that employee's testimony at hearing in coemployee's sexual discrimination case was not public concern because it did not address a public debate over employment discrimination); *Berger v. Battaglia,* 779 F.2d 992, 999 (4th Cir.1985) (race issues are matters of public concern), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720 (1986); *see Marshall v. Allen,* 984 F.2d 787, 795 (7th Cir.1993) (sex discrimination in a public agency is a topic of public concern). In 1992 and 1993, then, it could be safely concluded that when an employee speaks out on behalf of other employees who have suffered discrimination, the speech is a matter of public concern. *See Tindal,* 32 F.3d at 1539–40 (denying qualified immunity defense for events in 1989); *Marshall,* 984 F.2d at 795 (denying qualified immunity defense).

But this case involves discrimination plaintiff is alleged to have personally suffered. The amended complaint alleges that both the *Washington Post* and the *Collegiate Times* articles published accounts of *her* experiences in gaining tenure. The plaintiff took steps to make the charges of discrimination public, an important factor, *Holland,* 25 F.3d at 1255–56; *Morgan v. Ford,* 6 F.3d 750, 755 (11th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994), but the charges she made public were apparently focused on the plaintiff's own experiences. It was not clearly established in 1992 or 1993 whether these actions were protected. Indeed, later cases suggest that when an employee speaks out about discrimination suffered personally, the speech is not a matter of public concern. *Tindal,* 32 F.3d at 1539 (no First Amendment protection for speech that, for personal benefit, exposes personally suffered discrimination). The component of personal gain that accompanies the speech makes the difference. *Morgan,* 6 F.3d at 755. When these considerations join with the fact that a case-by-case inquiry is required, in which "subtle judgment" is necessary, *Berger,* 779 F.2d at 999, I believe the

officials at VPI acted in a gray area of constitutional law.

 This conclusion is buttressed when the balancing required under *Connick* and *Holland* is considered. As the Fourth Circuit has recently noted: "[O]nly infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined." *DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995). Even if the speech at issue here was a matter of public concern, it was not, and is not now, clearly established that the interest of the plaintiff outweighed the interest of VPI in running an effective academic atmosphere. Given plaintiff's failure to come forward with a case that is sufficiently similar to this one, *see id.,* and thereby show that the right she claims protection for was "clearly established" in 1992 and 1993, the individual defendants are entitled to qualified immunity.[8]

CONCLUSION:

The following claims survive the defendants' motion: (1) Title VII claims against VPI under Counts I and IV; (2) section 1983 claim for injunctive relief against VPI under Count II; And (3) section 1983 claims against VPI and the individual defendants under Count III. For the reasons stated above, the plaintiff's other claims fail.

An appropriate order will be entered.

*ORDER*

For the reasons stated in the memorandum opinion issued contemporaneously herewith, it is hereby ADJUDGED and ORDERED that the defendants' motion to dismiss be GRANTED in part and DENIED in part. Specifically:

1. the individual defendants are DISMISSED from any Title VII liability;

---

**8.** I do not decide definitively whether the speech is indeed a question of public concern. As I read the plaintiff's complaint, there is a request for injunctive relief against VPI for the First Amendment violations. Thus, the ultimate determination will have to await further factual development. For qualified immunity purposes, however, the record is sufficient to hold that, even if the speech is ultimately decided to be protected, that right was not clearly established in 1992 and 1993.

2. defendant Virginia Polytechnic is DISMISSED from any liability for money damages under 42 U.S.C.A. § 1983;

3. Count II of the complaint is DISMISSED as to the individual defendants;

4. Count I of the complaint is DISMISSED insofar as it is based upon acts occurring in the tenure and promotion process.