772 F.2d 907
 42 Fair Empl.Prac.Cas. 163, 27 Ed. Law Rep. 682
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ELIZABETH LANGLAND, PLAINTIFF-APPELLANT,
v.
VANDERBILT UNIVERSITY; THE BOARD OF TRUSTEES OF VANDERBILT
UNIVERSITY; THE COLLEGE OF ARTS AND SCIENCE OF
VANDERBILT UNIVERSITY, DEFENDANTS-APPELLEES.
 NO. 84-5478
 United States Court of Appeals, Sixth Circuit.
 8/19/85
 
 M.D.Tenn., 589 F.Supp. 995
 AFFIRMED
 On Appeal from the United States District Court for the Middle District of Tennessee, Nashville Division
 Before: KEITH and KENNEDY, Circuit Judges; and DOWD,* District Judge.
 PER CURIAM.
 
 
 1
 Plaintiff appeals from a judgment for the defendants after a non-jury trial in this employment discrimination action, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Secs. 2000e-2000e-17. Plaintiff-appellant, a female former associate professor in the Department of English in the College of Arts and Science of Vanderbilt University, alleged that Vanderbilt denied her a promotion with tenure because of her sex. Plaintiff also asserted a claim pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. Secs. 1681-1686, and a pendent state law claim for breach of contract. In a Memorandum Opinion and Order entered April 27, 1984, the District Court entered judgment for the defendants. For the reasons set forth below, we affirm.
 
 
 2
 In 1975, Vanderbilt appointed plaintiff, Elizabeth Langland, Ph.D., to a full-time, three-year tenure track position at the rank of assistant professor in the Department of English in the College of Arts and Science. The Dean of the College of Arts and Science, Jacque Voegeli, reappointed plaintiff to a second three-year term effective the fall semester of 1978.
 
 
 3
 On March 12, 1981, the tenured faculty of the Department of English met to consider the plaintiff's tenure. The faculty voted fifteen to five to recommend the plaintiff for promotion to tenure. Following the department vote, Dean Voegeli reviewed the plaintiff's file. After a request for additional comments, in a memorandum dated June 12, 1981, Dean Voegeli announced his decision not to concur in the recommendation that the University promote Professor Langland to the rank of associate professor with tenure. Dean Voegeli concluded that plaintiff's scholarship did not satisfy Vanderbilt's requirements for promotion to tenure.[1]
 
 
 4
 Appellant raises three arguments on appeal. First, appellant contends that the District Court's finding that Vanderbilt did not sexually discriminate against her in denying tenure is clearly erroneous. Second, appellant argues that the District Court's rejection of her breach of contract claim was clearly erroneous. Finally, appellant states that since the District Court erred in rejecting her sex discrimination claim, this Court should remand her Title IX claim for determination.
 
 I.
 
 5
 Fed. R. Civ. P. 52(a) sets forth the appropriate standard governing appellate court review of a district court's findings of fact by providing in pertinent part: 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' In United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948), the Supreme Court stated that: 'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' As recently as Anderson v. City of Bessemer City, 105 S. Ct. 1504, 1511 (1985), the Supreme Court wrote, 'This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.' The Court later stated: 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' Id. at 1512.
 
 
 6
 The District Court concluded that appellant had successfully carried her initial burden of creating the inference that the University unlawfully discriminated against her in denying her promotion to tenure. The District Court, however, further concluded that the defendants successfully rebutted appellant's prima facie case by articulating legitimate, nondiscriminatory reasons for the denial of tenure. The District Court found that plaintiff did not carry her burden of proving by a preponderance of the evidence that a prohibited gender-based motivation produced Dean Voegeli's refusal to concur in the English Department faculty's tenure recommendation. Appellant contends that, as established by a clear preponderance of the evidence, she was the victim of intentional sex discrimination.
 
 
 7
 Vanderbilt awards tenure based on a candidate's teaching, scholarship and service. The Faculty Manual and the College Rules and Procedures set forth the standards and criteria for promotion to tenure in the College of Arts and Science at Vanderbilt. The Faculty Manual for the 1980-81 academic year provided in relevant part:
 
 
 8
 Tenure appointments to the Vanderbilt faculty are made on the basis of: (a) creativity and productivity in research, quality of scholarship, national stature in one's professional discipline; (b) contribution to intellectual and academic life at Vanderbilt or elsewhere; (c) competence, imaginativeness, and interest in teaching. The priorities and weights given these criteria, in making appointments and promotions, may vary by (i) rank, (ii) College or School. Some schools have published separate statements elaborating on the use of these criteria; others rely on this Faculty Manual to indicate the standards for promotion and tenure. Excellence in all respects is not required, but competence in all and distinction or outstanding performance in one is necessary.
 
 
 9
 Tenure is not acquired automatically upon satisfactory completion of a given number of years of service, but upon a positive recommendation by a majority of a department's members who hold academic tenure, acting through the department head and concurred with by the dean of the College or School. . . . This policy does not imply that the department head or dean may not initiate suggestions as to eligible candidates.
 
 
 10
 The parties stipulated that Professor Langland had distinguished herself as a teacher and had demonstrated at least competence in service; consequently, the only issue was her competence as a scholar. Vanderbilt required competence in all three areas. Accordingly, excellence in one or two areas could not make up for lack of competence in another area.
 
 
 11
 Appellant contends that Dean Voegeli both defined and applied more stringent standards for tenure for her and other women than he did to male candidates whom he recommended for tenure. The District Court found that plaintiff's attempts to prove that Dean Voegeli had treated females disparately were the least convincing part of her case. The District Court found that Dean Voegeli did, in fact, treat professors differently, but that he did so for legitimate academic reasons. The District Court found no evidence of sex discrimination in the fact that at different times over a five and a half year period Dean Voegeli had used different terms to explain what competence in scholarship meant to him. The District Court alternatively found that even if Professor Langland has persuaded the District Court that Dean Voegeli held her to a higher standard than males, she 'did not meet the nondiscriminatory standards that were, in fact, applied to males.'
 
 
 12
 Appellant contends that Dean Voegeli looked primarily to actual publication. At trial, Dean Voegeli stated that he considered not just published works but also works accepted for publication as proof of scholarly achievement. Dean Voegeli also stated that he distinguished between rejections of books submitted for publication for financial reasons and rejections for qualitative reasons when evaluating a professor's scholarly achievement. These distinctions qualify as nondiscriminatory academic judgments. At the time of the Dean's decision, the University of Chicago Press and the University of Georgia Press had rejected Professor Langland's book length manuscript for qualitative reason.[2] In addition, of the three outside evaluators who evaluated and reviewed the plaintiff's scholarly work, two recommended against tenure and the third questioned the quality of her scholarly work.
 
 
 13
 Appellant contends Dean Voegeli failed to appropriately evaluate and weigh Professor Langland's scholarship in the field of women's studies and that this failure proves that she was the victim of sex discrimination. Beginning in the fall of 1978, Professor Langland served as chairperson of the women's studies program at Vanderbilt for three consecutive years. The women's studies program at Vanderbilt was an interdisciplinary program, not a department. Before she accepted the appointment, Professor Rupert Plamer, chairman of the English Department, counseled plaintiff that chairing the women's studies program would not earn her tenure. Professor Langland acknowledged that scholarly productivity was an essential requirement for tenure but felt her research in women's studies would enhance her writing on literary criticism. For every course Professor Langland taught in women's studies, Vanderbilt released her from one of her three mandatory English courses a semester. The District Court found that Dean Voegeli ignored Professor Langland's works of feminist criticism, 'not because of their feminist bent, but because they had not been published or accepted for publication' at the time of the tenure review. Furthermore, the District Court found that Dean Voegeli failed to consider the writings in women's studies as evidence of scholarly achievement for academic rather than discriminatory reasons. Since Vanderbilt was considering Professor Langland for tenure in the Department of English, not in the field of women's studies, this finding is not clearly erroneous.
 
 
 14
 The District Court acknowledged that plaintiff introduced proof which raised a question of whether in the case of Professor Robert Williams, a black male in the Philosophy Department, Dean Voegeli had considered the extraneous criteria of race in deciding to grant tenure. The record, however, indicates that Professor Williams had made significant scholarly contributions in the area of black philosophy and religion, an area of specialization within his recognized discipline and in which Vanderbilt had specifically hired him to teach. The District Court ultimately found that Dean Voegeli concurred in the recommendation for tenure in Professor Williams' case because Voegeli honestly believed that Williams had satisfied the established criteria for tenure. The District Court concluded that there was no evidence that Professor Williams' race was a factor in Dean Voegeli's decision to concur in his promotion to tenure.
 
 
 15
 For the reasons stated in the District Court's Memorandum Opinion and Order, plaintiff's statistical evidence does not persuade this panel that the District Court's finding that plaintiff failed to establish a general pattern of sex discrimination at Vanderbilt or that Dean Voegeli's decision conformed to any such pattern was clearly erroneous. Although plaintiff's statistics raised an inference that there was a general policy of sex discrimination at Vanderbilt, the District Court concluded that Vanderbilt persuasively rebutted that inference.
 
 II.
 
 16
 Appellant argues that the District Court's rejection of her breach of contract claim was clearly erroneous. The parties stipulated that Professor Langland's contract with Vanderbilt included the tenure guidelines contained in the Faculty Manual and the College Rules and Procedures. Professor Langland maintains that Dean Voegeli applied different tenure criteria in her case than those set out in the guidelines. In light of the previous discussion, the District Court's conclusion is not clearly erroneous.
 
 III.
 
 17
 Appellant claims that the District Court erred in rejecting her Title IX claim and that this Court should remand the case for determination of that claim. Title IX of the Education Amendments of 1972, 20 U.S.C. Secs. 1681-1686, prohibits sex discrimination in federally assisted educational programs and activities. Since the District Court found that Professor Langland was not the victim of sex discrimination, the District Court did not reach appellant's Title IX claim. Since the District Court's finding is not clearly erroneous, we agree with the District Court's disposition of the Title IX matter.
 
 
 18
 Accordingly, the judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 We note that following Dean Voegeli's decision, plaintiff, through counsel, complained to Dr. Emmett Fields, President of the University, that Dean Voegeli's decision was sexually motivated and that Dean Voegeli had imposed 'new and higher standards' upon her in judging her scholarship. In response to this complaint, President Fields asked Dr. Wendell Holladay, the Provost, to review plaintiff's promotion file, as well as the files in all other tenure decisions that Dean Voegeli, who had become Dean of the College of Arts and Science on January 1, 1976, had made while serving as Dean to determine whether: (1) Dean Voegeli applied the criteria provided in the Vanderbilt Faculty Manual ('Faculty Manual') and the 'Rules and Procedures for Appointments Renewals, Promotions, and Tenure in the College of Arts and Science, Vanderbilt University' ('College Rules and Procedures') in reaching his decision and (2) whether Dean Voegeli applied the criteria in Professor Langland's case consistent with other tenure decisions during his term as Dean
 Provost Holladay's investigation uncovered no evidence that Dean Voegeli had applied any criteria other than those described in the Faculty Manual and the College Rules and Procedures. Provost Holladay concluded that both the quantity of Professor Langland's published work or work accepted for publication and the quality of that work were perceptively less than most of the others that Dean Voegeli had denied tenure to on the grounds of inadequate scholarship. President Fields made his independent review and analysis of the fifty promotion files. Fields also concluded that Dean Voegeli had applied consistent standards to all tenure decisions and Dean Voegeli had evaluated Professor's Langland's file based on the criteria described in the Faculty Manual.
 
 
 [2]
 Although the University of North Carolina Press later accepted Professor Langland's book manuscript for publication, developments after the tenure review are not relevant to plaintiff's lawsuit or this appeal