Idit DOBBS–WEINSTEIN, Plaintiff–
Appellant/Cross–Appellee,

v.

VANDERBILT UNIVERSITY,
Defendant–Appellee/Cross–
Appellant.

Nos. 98–5266, 98–5268.

United States Court of Appeals,
Sixth Circuit.

Argued: April 22, 1999.

Decided and Filed: July 7, 1999.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 26, 1999.*

* Judge Moore would grant rehearing for the reasons stated in her dissent.

Richard J. Braun (argued and briefed), Richard J. Braun & Associates, Nashville, Tennessee, for Plaintiff–Appellant/Cross–Appellee.

William N. Ozier (argued and briefed), Bass, Berry & Sims, Nashville, Tennessee, John C. Callison, Vanderbilt University, Office of General Counsel, Nashville, Tennessee, for Defendant–Appellee/Cross–Appellant.

Before: KENNEDY, SILER, and MOORE, Circuit Judges.

SILER, J., delivered the opinion of the court, in which KENNEDY, J., joined. MOORE, J. (pp. 546 – 48), delivered a separate dissenting opinion.

## OPINION

SILER, Circuit Judge.

Plaintiff Idit Dobbs–Weinstein appeals the district court's grant of summary judgment in favor of defendant Vanderbilt University on her Title VII claim for gender and national-origin discrimination. Vanderbilt cross-appeals the dismissal without prejudice of Dobbs–Weinstein's pendent state law claims under the Tennessee Human Rights Act and for breach of contract. We AFFIRM.

## I. BACKGROUND

In January 1994 the philosophy department at Vanderbilt recommended that Dobbs–Weinstein be granted tenure by a vote of five to four of the tenured faculty after a thorough review of her scholarship, teaching, and service. That recommendation was then forwarded to the acting dean of the College of Arts and Sciences, John Venable, who in May 1994 declined to concur in the department's recommendation of tenure due to concerns with the quality of Dobbs–Weinstein's research and teaching. Thus, Dobbs–Weinstein was advised that her appointment would expire at the end of the 1994–95 academic year, on August 31, 1995. The philosophy department was unable to appeal Dean Venable's decision to Vanderbilt's Promotion and Tenure Review Committee ("PTRC") because it could not obtain the requisite two-thirds vote in its August 1994 vote on the appeal.

In October 1994 Dobbs–Weinstein filed a grievance with Vanderbilt's Senate Committee on Professional Ethics and Academic Freedom (the "PEAF Committee"). She cited a number of procedural irregularities and charged that gender and national-origin bias played a role in Dean Venable's decision. The PEAF Committee issued a report in April 1995 criticizing the reasoning in Venable's report, which detailed his rationale for declining to concur in the philosophy department's narrow recommendation for tenure. Concluding that Vanderbilt had not properly followed procedure in Dobbs–Weinstein's tenure review process, the PEAF Committee recommended that her file be forwarded to the PTRC. Dobbs–Weinstein filed the instant action in May 1995 before the PTRC acted.

After review, the PTRC recommended in August 1995 that Dobbs–Weinstein re-

ceive promotion and tenure, although it acknowledged that Dean Venable's prior contrary decision was based on "legitimate, reasonable and weighty" concerns. Its recommendation was accepted and implemented by Vanderbilt after the concurrences of Provost Burish and Chancellor Wyatt. In November 1995 the Board of Trustees promoted her to Associate Professor with tenure, retroactive to the end of the 1993–94 academic year, when Dobbs–Weinstein would have received tenure but for Dean Venable's decision not to concur in the philosophy department's recommendation. She received back pay for the 1994–95 academic year to compensate for the delayed promotion and was given full pay for the period after August 31, 1995, when payment for her previous contract had ended.

Dobbs–Weinstein asserts that Dean Venable's decision not to concur in the philosophy department's recommendation of tenure was discriminatory. She contends that the ultimate grant of tenure, promotion, and back pay, accomplished after a grievance process, has not compensated her for the interim emotional distress and the potential damage to her reputation that she suffered as a result of Dean Venable's decision. She also requests interest on the back pay she received. The district court granted summary judgment in favor of Vanderbilt. Although the district court found that the case was not moot and that Dobbs–Wein-

stein had presented a prima facie case of employment discrimination, the court determined that she had not shown pretext by Vanderbilt.

## II. DISCUSSION

■■■ This court reviews a grant of summary judgment de novo. *See City Management Corp. v. U.S. Chem. Co.*, 43 F.3d 244, 250 (6th Cir.1994). Summary judgment is to be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is only to be granted if a reasonable jury could not return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

■■■ The plaintiff bears the burden of establishing a prima facie case of employment discrimination. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). To establish a prima facie case of discrimination, Dobbs–Weinstein must show, at a minimum, that: (1) she was a member of a protected class; (2) she was qualified for the position; and (3) she suffered an adverse employment action. *See id.* at 582–83.[1] As a woman and

---

1. This court has not yet addressed the required elements of a prima facie case in a tenure denial situation. Here the district court used only the three factors listed above, citing an earlier Middle District of Tennessee case which utilized a similar approach and was affirmed by this court without comment on the prima facie elements. *See Langland v. Vanderbilt Univ.*, 589 F.Supp. 995, 1003 (M.D.Tenn.1984), *aff'd*, 772 F.2d 907, 1985 WL 13611 (6th Cir. Aug.19, 1985) (unpublished and per curiam). The district court reasoned that because Vanderbilt was capable of hiring another tenured professor in the philosophy department, it was unnecessary for Dobbs–Weinstein to establish that the position remained open or was filled by an applicant who was not a member of the protect-

ed class. *See Dobbs–Weinstein v. Vanderbilt Univ.*, 1 F.Supp.2d 783, 791 n. 12 (M.D.Tenn. 1998). Other circuits have employed varying standards. *See, e.g., Namenwirth v. Board of Regents*, 769 F.2d 1235, 1240 (7th Cir.1985) (requiring the plaintiff to show as a fourth element of the prima facie case that "an applicant not in the protected class was granted tenure"); *Tanik v. Southern Methodist Univ.*, 116 F.3d 775, 776 (5th Cir.) (as final element of a prima facie case, plaintiff must show that "he was denied tenure in circumstances permitting an inference of discrimination"), *cert. denied*, —— U.S. ——, 118 S.Ct. 600, 139 L.Ed.2d 488 (1997). Because we affirm this case for a failure to establish one of the above three elements of a prima facie case, we decline to reach the question of whether a

a citizen of Israel and Canada, Dobbs–Weinstein can establish that she is a member of a protected class. We may also presume that she is qualified to be an Associate Professor with tenure in Vanderbilt's philosophy department in light of the fact that she now holds that position. What remains to be established is whether she has suffered an adverse employment action cognizable under Title VII.[2]

■ Dobbs–Weinstein argues that the adverse employment action giving rise to her Title VII complaint is Dean Venable's decision not to concur in the philosophy department's recommendation that she receive promotion and tenure. As a result of that decision, Venable notified her that she would not receive tenure and that she would only be employed by Vanderbilt for one more year. Dean Venable did not have the last word in Dobbs–Weinstein's quest for tenure, however, as evidenced by the fact that she was able to utilize Vanderbilt's internal grievance process and is now an Associate Professor with tenure. The Board of Trustees made the final decision for Vanderbilt on Dobbs–Weinstein's position at the university.

We acknowledge that "tenure decisions in an academic setting involve a combination of factors which tend to set them apart from employment decisions generally." *Zahorik v. Cornell Univ.*, 729 F.2d 85, 92–93 (2d Cir.1984) (providing reasons why tenure decisions are often difficult to place in a traditional employment framework: the lifetime nature of the contract, the fact that the decisions are often non-competitive, the decentralized nature of the decision-making process, the multiplicity of factors in the decision, the fact that

tenure decisions are often quite contentious, and the reluctancy of courts to review the merits of a tenure decision). Because tenure decisions are so complex and potentially contentious, universities are well-served to have a grievance procedure for individuals wishing to appeal any of the many intermediate decisions or evaluations made during the tenure review process. Vanderbilt employs such a process, which allowed Dobbs–Weinstein to prevent Dean Venable's interim decision from becoming final. She does not contend that her position at Vanderbilt has been lessened as a result of her resort to the grievance process or that she is in any way unequal to other Associate Professors with tenure at the university.[3] Venable's decision does not constitute the "adverse employment action" required to establish a prima facie case.

In so holding, we note that we are not alone in focusing on whether Dobbs–Weinstein can present a case based on an "ultimate employment decision." *See Page v. Bolger*, 645 F.2d 227, 233 (4th Cir.1981) ("Disparate treatment theory as it has emerged in application of [§ 717, which covers federal employees] and comparable provisions of Title VII ... has consistently focused on the question whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating.... [I]t is obvious to us that there are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of § 717 and comparable provisions of Title VII.").

fourth element is required in a case involving the denial of tenure.

**2.** Because this court reviews a grant of summary judgment de novo, we may affirm the judgment of the district court on any grounds supported by the record, even if they are different from those relied upon by the district court. *See City Management Corp.*, 43 F.3d at 251.

**3.** She does, however, claim injury to her future employability at other institutions of higher learning, but the basis for this speculative element of damages is unclear, as the affidavits on which she relies were not provided to this court in the joint appendix.

At least three district courts have drawn similar conclusions in employment discrimination cases based on delayed grants of tenure. *See Howze v. Virginia Polytechnic Institute and State Univ.*, 901 F.Supp. 1091, 1096–97 (W.D.Va.1995); *Negussey v. Syracuse Univ.*, 1997 WL 141679 at *8–*12 (N.D.N.Y. March 24, 1997); *Davis v. City Univ. of New York*, 1996 WL 243256 at *8–*9 (S.D.N.Y. May 9, 1996). *Howze* held that the plaintiff had failed to establish a prima facie case of retaliation on the basis of the tenure process for lack of an "adverse employment action" when the final layer of plaintiff's tenure review process reversed earlier recommendations against her tenure. *Howze*, 901 F.Supp. at 1096–97 ("To hold otherwise opens the door to endless litigation of intermediate steps in an employment decision-making process that have no effect on the ultimate outcome.... [W]here the tenure decision was following the chain of appeal, each decision along the way is not actionable. Only the final decision is the ultimate act.").

■ Dobbs–Weinstein has not created a claim for employment discrimination by suing Vanderbilt before the final decision on her promotion and tenure was made. She argues that her claims for emotional distress and professional reputation damages mean that her claim is viable, but that argument places the cart before the horse. A claim for potentially recoverable damages does not transform Venable's decision into an "adverse employment action." Dobbs–Weinstein succeeded in the grievance process, and Vanderbilt's final decision was to grant her tenure. She has not here suffered a final or lasting adverse employment action sufficient to create a prima facie case of employment discrimination under Title VII. To rule otherwise would be to encourage litigation before the employer has an opportunity to correct through internal grievance procedures any wrong it may have committed.

■ Vanderbilt argues in its cross-appeal that the district court erred in dismissing Dobbs–Weinstein's state law claims without prejudice because it claims that judicial economy considerations weigh in favor of dismissal with prejudice. Under 28 U.S.C. § 1367(c)(3), the district court has the discretion to dismiss claims over which it has supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction. This court reviews the dismissal of pendent state law claims for abuse of discretion. *See Taylor v. First of America Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992). The district court did not abuse its discretion in dismissing Dobbs–Weinstein's state law claims without prejudice after it had dismissed her federal claims without a trial.

AFFIRMED.

MOORE, Circuit Judge, dissenting.

The majority holds that, even if Dean Venable discriminated against Professor Dobbs–Weinstein in declining to concur in the philosophy department's tenure recommendation, Dobbs–Weinstein did not suffer an adverse employment action and may not recover under Title VII. This is so, the majority concludes, because Dobbs–Weinstein ultimately received tenure and back pay after resorting to the University grievance process and filing suit. I disagree and respectfully dissent.. I do not think that, as a matter of law, we can reject the assertion of an adverse employment action in this instance.

In January 1994 the Vanderbilt philosophy department voted to recommend that Dobbs–Weinstein be promoted to the tenured position of Associate Professor as of the conclusion of the 1993–94 academic year. In May 1994 Dean Venable declined to concur in this recommendation, and subsequently Dobbs–Weinstein was informed that her contract with the University would conclude on August 31, 1995. Although Vanderbilt ultimately granted Dobbs–Weinstein tenure and promotion, this did not occur until November 1995, well over a year after tenure otherwise

would have been granted and several months after Dobbs–Weinstein's contract terminated. As a result of the untimeliness of Vanderbilt's internal review process (over a year passed between Dobbs–Weinstein's filing of her grievance and the University's ultimate action on that grievance) and the speed with which the expiration of her contract approached, Dobbs–Weinstein was forced to seek employment outside of the University, and the disclosure of Vanderbilt's initial decision to deny tenure inevitably became known within the academic community. Dobbs–Weinstein has offered evidence indicating that her academic reputation and prospects were damaged thereby. Thus, in addition to seeking interest on the back pay provided by the University, Dobbs–Weinstein seeks to recover for the reputational damage and the emotional harm suffered as a result of Dean Venable's alleged discriminatory action.

Dobbs–Weinstein has alleged compensable injuries under Title VII. "The goal of Title VII is to 'make persons whole for injuries suffered on account of unlawful employment discrimination.'" *Suggs v. ServiceMaster Educ. Food Management,* 72 F.3d 1228, 1233 (6th Cir.1996) (quoting *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). This court has recognized that in making a plaintiff whole it often will be appropriate to award prejudgment interest, *see Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1170 (6th Cir.1996), *amended,* 97 F.3d 833 (6th Cir.1996), and damages for emotional harm. *See, e.g., Turic v. Holland Hospitality, Inc.,* 85 F.3d 1211, 1215 (6th Cir.1996). Similarly, a successful Title VII plaintiff should be compensated for reputational damage especially when it impacts on her employment or her future employability and advancement.

Despite the prospect of compensable damages, however, the majority concludes that Dobbs–Weinstein did not suffer an adverse employment action that could entitle her to relief under Title VII. The existence of an adverse employment action clearly is an element of a prima facie case under Title VII, but this court has not before addressed the scope of this requirement in similar circumstances. In *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 885 (6th Cir.1996), however, we held that a Title VII plaintiff must demonstrate a materially adverse change in the terms or conditions of employment to make out a prima facie case. In *Kocsis* we determined that the reassignment of an employee which entailed no decrease in pay or benefits and no material change in duties did not constitute a materially adverse employment action. *See id.* at 886–87. Dobbs–Weinstein, by contrast, was denied tenure and was informed that her employment at Vanderbilt would end at the end of the academic year. Although this decision ultimately was reversed, the termination of Dobbs–Weinstein's employment was not stayed pending the outcome of a lengthy review process. In this circumstance, I would hold that Dobbs–Weinstein suffered a materially adverse change in the terms or conditions of her employment.

The majority cites a number of cases from outside the circuit to bolster its contention that Dobbs–Weinstein did not suffer an adverse employment action. However, I find all of these cases to be distinguishable and some to be supportive of Dobbs–Weinstein's position. In *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.) (en banc), *cert. denied,* 454 U.S. 892, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981), the court reasoned that only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating" are covered by Title VII. The selection of a review committee that would make hiring or promotion decisions, the court concluded, was only an "interlocutory or mediate decision[ ]" that does not implicate Title VII. *See id.* In a situation in which an employee has been given notice of termination and the clock is running, however, I would not think that the existence of a grievance

procedure automatically transforms the tenure denial into an interlocutory decision for the purposes of Title VII.

In *Howze v. Virginia Polytechnic & State University*, 901 F.Supp. 1091, 1096 (W.D.Va.1995), a tenure candidate initially was denied tenure but on internal university review "was ultimately awarded her promotion and tenure and given pay and rank increases *at the same time as other promotees.*" (Emphasis added.) Thus, it could be fairly said that the decision complained of had "no effect on the ultimate outcome" and that the *Howze* plaintiff, unlike Dobbs–Weinstein, did not suffer an adverse employment action. *See id.*

In *Davis v. City University of New York*, No. 94 CIV. 7277(SHS), 1996 WL 243256, at *8 (S.D.N.Y. May 9, 1996), the plaintiff alleged that the defendants had delayed and attempted to block her award of tenure and promotion. The court held that there was no material adverse employment action, but the opinion does not indicate whether the delay was serious, and the only adverse effect claimed by the plaintiff was anxiety. *See id.* at *9.

Finally, in *Negussey v. Syracuse University*, No. 95–CV–1827, 1997 WL 141679, at *6–12 (N.D.N.Y.1997), the court held that a nine-month delay in a grant of tenure did not constitute an adverse employment action. In its analysis, however, the *Negussey* court focused on whether the plaintiff had suffered any injuries in the course of the appeal process and concluded that he had not. *See id.* at *10–12. The court noted, however, that injury to professional reputation could constitute an adverse employment action for a university professor. *See id.* at *11. Dobbs–Weinstein, by contrast, has raised credible allegations of damage to professional reputation. Moreover, the eighteen-month interval between the initial denial of tenure and the ultimate award in Dobbs–Weinstein's case seems excessive. *See id.* at *12 (remedial action that is insufficiently prompt can constitute an independent, actionable harm under Title VII).

Unlike the majority, I am not concerned that permitting Dobbs–Weinstein to go forward with her action will encourage premature litigation concerning adverse initial employment decisions. As long as an employer's appeal or grievance process operates in a timely fashion, the employee generally will not suffer a materially adverse action. This is particularly true if the employer refrains from terminating the employee in the interim, but, even if the employee is wrongfully terminated, voluntary reinstatement and provision of back pay will limit or possibly even obviate the recovery of compensatory damages. Moreover, the filing of this lawsuit may have been a factor in bringing closure to a lengthy internal review process. In such a situation, the litigation is necessary and should not be discouraged.

For the foregoing reasons, I respectfully dissent.