Christine ADAM, Plaintiff,

v.

LINN–BENTON HOUSING AUTHORITY, James Hackett, individually and in his official capacity as Executive Director, Paulette Postell, individually and in her official capacity as Section 8 Supervisor, Heike Scott, individually and in her official capacity as Caseworker, Defendants.

No. CIV. 00–6166–TC.

United States District Court,
D. Oregon.

March 20, 2001.

Ellen Gradison, Oregon Law Center, Albany, OR, Roy V. Smith, Legal Aid Services of Oregon, Albany Regional Office, Albany, OR, for Christine Adam, Plaintiff.

Douglas R Andres, Bullivant Houser Bailey, Portland, OR, for Linn Benton Housing Authority, Defendant.

## ORDER

COFFIN, United States Magistrate Judge.

Plaintiff has filed a complaint alleging that defendants discriminated against her in violation of several federal and state statutes and inflicted emotional distress in violation of Oregon common law. Presently before the court is defendants' Motion for Summary Judgment (# 32). For the reasons stated below, defendants' motion is granted.

### FACTUAL BACKGROUND [1]

Plaintiff is a 37–year–old disabled woman suffering from a panic disorder and a learning disability which limits her ability to read. She has received Section 8 rent subsidies for over ten years. Over most of those ten years, she has been assisted in the preparation of her paperwork by case-

---

1. The facts presented are those that are undisputed or, if disputed, plaintiff's version of the facts.

workers employed by defendant Linn–Benton Housing Authority. In March, 2000, her caseworker, Heike Scott, began proceedings to terminate plaintiff's Section 8 assistance because she missed the deadline for submitting her annual recertification paperwork. Scott made the decision to terminate plaintiff's Section 8 assistance on April 6, and on April 13, after receiving approval from Section 8 Supervisor Paulette Postell, she sent plaintiff a letter advising her that her assistance would terminate on May 30. Plaintiff's boyfriend submitted the required paperwork on April 14. Plaintiff contacted Scott to ensure that the paperwork had been received, but Scott notified her that she would not rescind the proposed termination and advised her to request a hearing regarding the decision.

Plaintiff submitted a request for a hearing on April 18, and a hearing was held on May 4, 2000, with defendant James Hackett acting as the Hearings Officer. On May 8, Hackett issued a decision rescinding the termination of plaintiff's Section 8 assistance. Plaintiff was never denied her Section 8 rent subsidies.

On May 10, 2000, plaintiff's attorney sent a letter to the Housing Authority requesting various accommodations of plaintiff's disabilities. On May 22, Hackett responded in a letter agreeing to provide several accommodations, including transferring her file to another caseworker, completing all forms on plaintiff's behalf for her signature, and completing all paperwork through a home visit to plaintiff if plaintiff desires.

Plaintiff filed a complaint in this court on June 1, 2000. She presently maintains the following claims:

1. Defendants violated the Fair Housing Act;

2. Defendant Linn–Benton Housing Authority violated Title II of the Americans with Disabilities Act;

3. Defendant Linn–Benton Housing Authority violated Section 504 of the Rehabilitation Act of 1973;

4. Defendant Linn–Benton Housing Authority violated Oregon Revised Statute 659.425(3); and

5. Defendant Linn–Benton Housing Authority intentionally or recklessly inflicted emotional distress.

Defendants have filed a motion requesting that the court grant them summary judgment on all claims.

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.,* 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez,* 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Insurance Co. Of North America,* 638 F.2d 136, 140 (9th Cir.1981).

Deference to the non-moving party does have some limit. The non-moving party "must set forth specific facts showing that there is a *genuine* issue for trial." Fed. R.Civ.P. 56(e) (emphasis added). The "mere existence of a scintilla of evidence in support of the plaintiff's position would be insufficient." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### DISCUSSION

A. *Plaintiff's federal claims.*

1. *Applicable law.*

■ To establish a prima facie case under the Fair Housing Act ("FHA"), plaintiff "is required to show that (1)[she] suffers from a handicap as defined in 42 U.S.C. § 3602(h); (2) defendants knew of [plaintiff's] handicap or should reasonably be expected to know of it; (3) accommodations of the handicap 'may be necessary' to afford [plaintiff] an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." *United States v. California Mobile Home Park Management Co.*, 107 F.3d 1374, 1380 (9th Cir.1997).

■ To establish a prime facie case that a public program violates Title II of the Americans with Disabilities Act ("ADA"), plaintiff must show that (1) she is a "qualified individual with a disability"; (2) she was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of her disability. *Weinreich v. Los Angeles County Metropolitan Transportation Authority*, 114 F.3d 976, 978 (9th Cir. 1997).

■ To establish a prima facie case under Section 504 of the Rehabilitation Act, plaintiff must show that (1) she is an "individual with a disability"; (2) she is "otherwise qualified" to receive benefits of a program; (3) she was denied the benefits of the program solely by reason of her disability; and (4) the program receives federal financial assistance. *Weinreich*, 114 F.3d at 978.

2. *Analysis in this case.*

■ Plaintiff has not alleged facts sufficient to establish a prima facie case on any of her federal claims.

The undisputed facts of the case are that upon being informed that her Section 8 benefits would be terminated for failure to complete her recertification paperwork by the applicable deadline,[2] plaintiff was advised of the availability of a hearing and requested one. This hearing resulted in the rescission of the decision. It is surely litigious excess to maintain a lawsuit under

---

**2.** Completion of the recertification paperwork is required only to ensure the continuation of Section 8 assistance. As such, "reasonable accommodation" as it relates to completion of the recertification paperwork is inextricably intertwined with whether or not there was an actual denial of Section 8 assistance.

Plaintiff contends that defendants should have an affirmative duty to ensure that disabled participants in Section 8 are able to complete their paperwork by inquiring into the extent of their disability. Such a duty is not relevant to this disposition, because there was never a denial of Section 8 assistance. However, the court notes that an applicable regulation of the Department of Housing and Urban Development prohibits defendants from inquiring into the nature and extent of a participant's disability.

anti-discrimination statutes when the necessary basis for the lawsuit—discrimination resulting in the denial of benefits—never occurred because of an internal review process established by defendant Housing Authority.

Plaintiff contends that because the regulation allowing for an informal hearing, 24 C.F.R. 982.555, does not *require* a recipient of housing assistance to seek an informal hearing upon notification that her benefits will terminate, litigation is not conditioned on exhaustion of this administrative remedy. However, plaintiff in this case was advised by her caseworker about her right to a hearing if she requested such, she *did* seek such a hearing, and as a result the termination decision was overturned. She cannot now bring a claim of discrimination based solely on that period of time between when she was notified her benefits would terminate and when the termination decision was overturned. *See, e.g., Dobbs–Weinstein v. Vanderbilt University*, 185 F.3d 542, 546 (6th Cir.1999), *cert. denied* 529 U.S. 1019, 120 S.Ct. 1421, 146 L.Ed.2d 313 (2000) (rejecting a discrimination claim where the plaintiff had already successfully challenged the allegedly discriminatory decision by an internal grievance procedure); *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) (plaintiff could not base a discrimination claim on an adverse employment decision where she abandoned an internal review process that could have rectified an unlawful outcome). If plaintiff had actually been denied housing assistance benefits while her hearing was pending, the result here might well be different. However, where she never suffered a denial of benefits, she cannot successfully maintain a claim under the Fair Housing Act, the Americans with Disabilities Act, or the Rehabilitation Act. Defendants' motion for summary judgment as to these claims is granted.[3]

**B.** *Plaintiff's claim under ORS 659.425(3).*

**1.** *Applicable law.*

Oregon Revised Statute 659.425(3) provides that:

> It is an unlawful practice for any place of public accommodation, resort or amusement as defined in ORS 30.675, or any person acting on behalf of such place, to make any distinction, discrimination or restriction because a customer or patron is a disabled person.

**2.** *Analysis in this case.*

■ For the same reasons plaintiff's federal claims fail, so must her claim under ORS 659.425(3). Plaintiff was not discriminated against or restricted by the defendant,[4] because the Housing Authority's own internal hearing process rescinded the decision to terminate plaintiff's benefits before it ever became effective. As such, it cannot be said that the Housing Authority discriminated against plaintiff.[5] Sum-

---

**3.** In addition to her claims for damages, plaintiff has requested equitable relief to ensure that she avoids similar problems in the future. Defendants have already agreed to make such accommodations, to plaintiff's satisfaction. The court declines to expand upon that agreement.

**4.** Only the Housing Authority is a defendant under this claim.

**5.** Although not necessary to the disposition of this claim, the court notes that the arguments made by the Housing Authority that it is not a "place of public accommodation" as envisioned by the statute are persuasive. The statute speaks of "customers" and "patrons", and as discussed in *Schwenk v. Boy Scouts of America*, 275 Or. 327, 551 P.2d 465 (1976), the legislative history suggests it was designed to prevent discrimination by retail and commercial establishments. Even if there was actionable discrimination in this case, it is unlikely that plaintiff could recover against the Housing Authority under ORS 659.425(3).

mary judgment on this claim is granted in favor of defendant Housing Authority.

### C. *Plaintiff's claim of intentional infliction of emotional distress.*

#### 1. *Applicable law.*

■ To assert a claim for intentional infliction of emotional distress under Oregon law, plaintiff must present sufficient evidence that a factfinder could conclude that (1) defendant[6] intended to inflict severe emotional distress on plaintiff; (2) defendant's acts were the cause of plaintiff's severe emotional distress; and (3) defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. *See McGanty v. Staudenraus,* 321 Or. 532, 543, 901 P.2d 841 (1995).

#### 2. *Analysis in this case.*

■ This court is not prepared to say that a plaintiff can maintain an action for intentional infliction of emotional distress based solely on the preliminary decisions of an agency operating lawfully within its regulatory guidelines. Interim decisions, such as the one made here, are part of an overall process and must be viewed as such. Even if they later prove to be erroneous, such interim decisions, as a matter of law, are not "extraordinary transgression[s] of the bounds of socially tolerable conduct." Plaintiff has not alleged facts which demonstrate the existence of any issue of material fact that could otherwise support this claim. Summary judgement on this claim is granted to defendants.

### CONCLUSION

For the above stated reasons, defendants' Motion for Summary Judgment (# 32) is granted, and this action is dismissed.

---

6. Again, only the Housing Authority is a defendant under this claim.