NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0793n.06
Filed: September 15, 2005

No. 03-6366

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EUGENIA SHOHADAEE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE AND DAVIDSON | ) | |
| COUNTY, BY AND THROUGH ITS | ) | |
| METROPOLITAN BOARD OF PUBLIC | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| _____ | ) | |

Before: CLAY and SUTTON, Circuit Judges, and O'MEARA, District Judge.[*]

JOHN CORBETT O'MEARA, District Judge. Plaintiff, a public school teacher who was temporarily denied tenure by her school district, challenges the district court's denial of summary judgment regarding whether she suffered an adverse employment action under Title VII, 42 U.S.C. §§ 2000e, *et seq*. For the following reasons, we affirm the judgment of the district court.

## **BACKGROUND**

Plaintiff Eugenia Shohadaee was a high school Spanish teacher at the Nashville School

---

[*]The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

of the Arts in Nashville, Tennessee. She alleges that she was sexually harassed by the high school principal and was denied tenure in retaliation for filing an EEOC complaint. Plaintiff's sexual harassment and retaliation claims were tried to a jury in September 2003. The jury found in favor of Defendant because Plaintiff did not prove "that she suffered a tangible job detriment." Verdict Form at ¶ 1; J.A. at 299.

The sole issue before this court is whether Plaintiff suffered a tangible job detriment (also referred to as an adverse employment action). Plaintiff contends that this was an inappropriate issue for the jury to decide because it is a question of law. Plaintiff further asserts that the district judge improperly denied her motion for summary judgment on this issue. Defendant, on the other hand, contends that an issue of fact existed as to whether Plaintiff suffered an adverse employment action and that it was a proper jury question.

Plaintiff claims that she did suffer an adverse employment action because she was denied tenure in March 2001, shortly after she filed an EEOC charge. She was informed on April 9, 2001, that her employment would be terminated effective May 25, 2001. J.A. at 79. With the assistance of her union representative, Plaintiff appealed the denial of tenure to the Assistant Superintendent of Schools, Graciela Escobedo. On April 25, 2001, Plaintiff received a letter from Escobedo, informing her that her "2000-01 non re-elect will stand," but that she "will be re-hired to teach Spanish at Nashville School of Acts and J.T. Moore for the 2001-02 [*sic*] unless enrollment changes at Moore." J.A. at 98. Escobedo concluded by informing Plaintiff that if "you meet the evaluation requirements to receive tenure in the 2001-02 school year, you will be recommended for such." *Id.* Escobedo testified that she gave Plaintiff another opportunity to prove herself because it appeared that the proper procedures were not followed in evaluating her

for tenure.

Plaintiff did not lose any tangible benefits or income as a result of the initial denial of tenure. After teaching during the 2001-2002 school year, Plaintiff was granted tenure. Escobedo testified, and Plaintiff has not rebutted, that no employment benefit (including insurance, leave time, or pension) was affected by the one year delay in granting Plaintiff tenure. J.A. at 796-97.

Although Plaintiff now asserts that the issue of whether she experienced an adverse employment action was not a proper jury question, Plaintiff did not object at trial to the jury instructions or verdict form.

## LAW AND ANALYSIS

### I. Standard of Review

Plaintiff positions this appeal as one of the lower court's denial of her motion for summary judgment. Plaintiff also claims that the court erred by presenting the adverse employment action question to the jury.

In general, the denial of a motion for summary judgment is "not properly reviewable on appeal from the final judgment entered after trial." *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990) (citation omitted). The *Jarrett* court found that, although the improper denial of a motion for summary judgment may be unjust, "we believe it would be even more unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial." *Id.* at n.1. This court subsequently

recognized that "no comparable injustice would flow from appellate review" of the denial of a motion for summary judgment where "the issue is purely one of law." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *see also Paschal v. Flagstar Bank*, 295 F.3d 565, 571-72 (6th Cir. 2002).

In this instance, however, Plaintiff cannot take advantage of this exception to the traditional rule that the denial of a motion for summary judgment may not be reviewed on appeal. Even aside from the alleged legal question whether Plaintiff was subjected to an adverse employment action, several fact disputes were implicated by Plaintiff's motion for summary judgment - the most important being whether Dr. Ross made the discriminatory comments at issue. At any rate, in the face of this fact dispute, even if Plaintiff had filed a motion for judgment as a matter of law after the jury verdict against her (which she did not), this fact dispute would have precluded her from obtaining relief on appeal given the customary rule that we must give the winner of a jury verdict the benefit of the doubt on all factual debates presented to the jury.

## II.    Adverse Employment Action

Plaintiff sought to prove sexual harassment of the "quid pro quo" variety, which requires: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual advances or requests for sexual favors; (3) that the harassment was on the basis of sex; (4) that her refusal to submit to the unwelcome demands resulted in an adverse employment action; and (5) that liability may be imputed to the employer. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 (6th Cir. 2000). As noted above, the only element at issue in this appeal is whether

Plaintiff experienced an adverse employment action.

"To prevent lawsuits based upon trivial workplace dissatisfaction, we require that a plaintiff prove the existence of an 'adverse employment action' to support a Title VII claim." *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc). An adverse employment action is "a materially adverse change in the terms of . . . employment." *Id.* at 797 (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885-87 (6th Cir. 1996)). A "mere inconvenience or an alteration of job responsibilities or a bruised ego is not enough to constitute an adverse employment action." *Id.* (citation and internal quotation marks omitted). Further, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions." *Id.* A reassignment may be an adverse employment action if it constitutes a demotion evidenced by "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (citing *Kocsis*, 97 F.3d at 886).

The Supreme Court relied in part upon *Kocsis* when it noted that a "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

In *White*, this court held that a thirty-seven day suspension without pay constituted an adverse employment action, even though the employer eventually reversed the decision and gave the plaintiff back pay. *Id.* at 802. The court reasoned that the plaintiff suffered the loss of her wages and was not made whole by the back pay. *Id.* (noting that "part of making a Title VII plaintiff whole is compensating her for interest on the back pay, attorney's fees, and emotional

suffering"). On the other hand, this court has held that the temporary removal of a university professor from his position as the Coordinator of Sports Studies did not rise to the level of an adverse employment action because the removal was only for ten days, the professor maintained his position as a full-time instructor, and he never lost any income. *Bowman*, 220 F.3d at 461-62.

In *Dobbs-Weinstein v. Vanderbilt University*, 185 F.3d 542 (6th Cir. 1999), a plaintiff was denied tenure in May 1994 and was informed that her appointment would expire on August 31, 1995. She grieved that decision, which was reversed in November 1995. The plaintiff was awarded tenure, retroactive to the 1993-94 academic year, and received back pay to compensate for the delayed promotion. The plaintiff filed a gender and national origin discrimination suit pursuant to Title VII, contending that the initial denial of tenure was an adverse employment action.

This court disagreed, finding that the initial denial of tenure was an interim or interlocutory decision that was not actionable as an "ultimate employment decision." *Id.* at 545-46. The majority did not discuss *Kocsis* or other cases defining an "adverse employment action." Rather, the court relied upon district court cases holding that the delayed grant of tenure is not an adverse employment action. *Id.* at 546.

This court subsequently rejected the "ultimate employment decision" standard used in *Dobbs-Weinstein*. In *White*, the court noted that the *Dobbs-Weinstein* court did not cite to a "statutory provision that limits Title VII's application to ultimate employment decisions." *White*, 364 F.3d at 801. The *White* court "reaffirm[ed] the definition [of adverse employment action] that we have developed in cases such as *Kocsis* and its progeny." *Id.* at 800. The majority in

-6-

*White* also noted that "[b]ecause we are not presented here with a denial of tenure, we do not decide to what extent our holding in *Dobbs-Weinstein* survives our decision in this case." *Id.* at 802 n.7.

In the present case, the trial court relied upon *Dobbs-Weinstein* (*White* had not yet been decided) in its analysis of whether Plaintiff suffered an adverse employment action. The trial court distinguished *Dobbs-Weinstein*, finding that although Dobbs-Weinstein ultimately was granted tenure retroactive to the time of the initial denial, Plaintiff was not granted tenure retroactively. The court reasoned that Plaintiff "was essentially denied whatever benefit the proof may show to be associated with becoming tenured in the metropolitan public school system while she served a fourth probationary year in the system, with no guarantee of being tenured at the conclusion of that year. But for this factual distinction, the Court would be bound to find that plaintiff had suffered no adverse employment action and that summary judgment on this claim is appropriate." J.A. at 262. The court further stated that "[w]hile plaintiff was given one year and was able to take advantage of it, she was still tenured later rather than sooner after being made to jump through an additional hoop, and therein lies the adversity that Title VII was designed to remedy, upon proof of discriminatory purpose." *Id.* at 263.

It is undisputed that, although Plaintiff was initially denied tenure, she was given another opportunity to prove herself. During that year, she did not lose any income or benefits. She does not contend that the terms and conditions of her employment materially changed. Plaintiff is no worse off with respect to seniority, income, or benefits having been granted tenure after her fourth year rather than after her third year. Although the trial court reasoned that Plaintiff "was essentially denied whatever benefit the proof may show to be associated with" the delay of

tenure, Plaintiff has not shown that she was denied any such benefit, either at the summary judgment stage or at trial. Under these circumstances, it makes no difference whether the adverse-employment issue, as Plaintiff contends, is solely a question of law and thus should not have been submitted to the jury. On this record, Plaintiff has failed to show how she was prejudiced by permitting the jury to decide the issue. By any standard, whether we treat the adverse-employment inquiry as one of law or fact, Plaintiff has not shown how she satisfies the test for establishing an adverse employment action.

We **AFFIRM** the judgment of the district court.